THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN JOHNSON, Defendant-Appellant.

Second District   No. 85—0428

Opinion filed April 10, 1986.

Peter B. Nolte, of Sreenan & Cain, P.C., of Rockford, for appellant.

Daniel Doyle, State's Attorney, of Rockford (William L. Browers and Peter M. Tumminaro, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

Defendant, Steven Johnson, was charged by indictment with unlawful possession, with intent to deliver, of more than 30 grams of a substance containing cocaine. (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2).) The first trial of this charge resulted in a mistrial when the jury was unable to agree on a verdict. Following a second jury trial, defendant was found guilty. Judgment of conviction was entered, and he was sentenced to a six-year term of imprisonment. Defendant appeals, contending (1) that evidence implying his involve-

ment in prior drug transactions was improperly admitted, (2) that his motion for production of microfilm was erroneously denied where the State introduced into evidence enlargements of business records stored on the microfilm, and (3) that his motion for continuance was improperly denied.

Prior to the first trial defendant filed a motion *in limine*, alleging that the State's evidence would show that he was arrested on the date of the offense, March 1, 1984, after he picked up a package containing cocaine from a Federal Express office in Rockford. The motion sought to preclude the State from presenting evidence that, prior to March 1, 1984, defendant had received other packages at that office, the contents of which were unknown to the State. Defendant did not seek a hearing on his motion until the first day of the first trial, at which time it was granted in part and denied in part.

After the first trial ended without a verdict, the case was set for a second jury trial on Monday, March 18, 1985. On the Friday before the scheduled trial date, the State filed a motion for reconsideration of the order which had granted the motion in part. According to the State, at the first trial defendant testified that he picked up the package on March 1, 1984, at the request of an acquaintance who had told defendant he was traveling to Rockford by "hitching a ride with somebody" and that he was "cramped for space." Defendant testified that he expected the package to contain the personal effects of his acquaintance, and that he was surprised the package was not larger than it was. The State sought to prove that in each of the three months preceding his arrest, defendant received at the same Federal Express office a package of about the same weight from the same sender. On the first day of the second trial, the court granted the State's motion for reconsideration and denied defendant's motion *in limine*.

Following this ruling, defendant filed a motion for continuance, seeking additional time to prepare for the evidence involving the prior deliveries. The court denied that motion. Defendant also filed a motion for production of the microfilm on which the business records of the prior deliveries were stored. The court denied that motion as untimely, and the trial proceeded.

The State presented the testimony of five witnesses: John Borgan and Cindy Hulbert, employees of Federal Express; James O'Connor, a forensic chemist who analyzed the contraband seized by the police; and Roy Garcia and Jeffrey Trego, police officers involved in that seizure and the arrest of defendant.

John Borgan was the senior manager of the Rockford office of

Federal Express. He testified that customers can pick up packages at the office instead of having them delivered. When a package is picked up by the customer, Federal Express has him sign a "hold for pickup manifest" acknowledging delivery. At the end of each business day, these documents are sent to corporate headquarters in Memphis, Tennessee, where they are held for 30 days by the tracing department. After 30 days the documents are microfilmed, and the originals are destroyed. Borgan stated that the microfilm is retained indefinitely.

Cindy Hulbert was a customer service agent at the Rockford office. She testified that on February 29, 1984, at about noon, defendant telephoned the Rockford office and asked if there was a package for him "holding for pickup." Hulbert determined that there was not, and she so informed him.

At about 8:20 a.m. on the following day defendant came into the office and asked if he had a package "holding at the station." Hulbert testified that there was a package for defendant, but that she had been instructed by the police to tell him there was not. She told defendant she would check to see if there was a package for him, and she went into the "hold room" and looked around. She found a package addressed to Ron Johnson, and she went back out to the front counter and asked defendant "if he could have possibly meant Ron Johnson" instead of Steven Johnson. Defendant asked whether the package addressed to Ron Johnson was from Denver. Hulbert then retrieved that package from the hold room and showed it to defendant, and he said that it was not his. Hulbert then told defendant that his package might be on a delivery truck, and that she would try to contact the driver later on to find out. She suggested that defendant call her after she had an opportunity to contact the driver. Defendant said he would and then left the office.

At about 9:30 or 10 a.m. defendant called Hulbert and asked whether she had talked to the driver, and she replied that she had, and that the package was on the truck. Defendant asked if he would be able to meet the driver, and he said he really needed the package. He told Hulbert that the address on the package was not the correct address for delivery because he had moved. Hulbert replied that that would not be a problem because the package could not be delivered unless it was signed for. She advised defendant that it would be brought back to the office. Defendant then asked if he could meet the driver somewhere on his route, and Hulbert replied that that would not be possible because Federal Express had a commitment to deliver the packages on the truck by 10:30 a.m. She suggested that defendant call back at noon to see if his package had been brought back to the

office.

At about noon defendant did call back. Hulbert told him that the package had not yet been returned, and that she would call him as soon as it was available. Defendant gave her a phone number where she would be able to reach him.

Hulbert testified that at about 2 p.m. she called defendant and told him that his package had arrived. Defendant said that that was good, that he could go on with his daily business, and that he would be right over. About 15 or 20 minutes later he arrived. He said that he was glad his package was there, and Hulbert apologized for the inconvenience caused by the delay. She retrieved the package from the hold room and filled out a hold for pickup manifest. Defendant signed the manifest and Hulbert gave him the package. He asked Hulbert whether he could use the phone, and she told him he could not because all the lines were busy. Defendant then left the office.

Hulbert identified an air bill which had been attached to the package. The air bill indicated that the sender was Pro Lab located at 1200 West Miss in Denver, Colorado. The account number was listed as 802—0000—5. Hulbert said this number indicated that the sender did not charge the delivery to an account but paid cash in advance. The first three numbers were the same as the first three numbers of the sender's zip code. The air bill indicated that the package was received by Federal Express in Denver at 4:50 p.m. on February 29, 1984, and that it weighed between one and two pounds. The recipient's name and address were listed as Steven Johnson, 1903 North Church Street in Rockford. Hulbert also identified the hold for pickup manifest which she filled out and defendant signed when he picked up the package.

Hulbert also testified that on February 15, 1984, she waited on defendant when he came to the office and picked up a package. She identified a copy of the manifest that she filled out and defendant signed. The manifest listed the account number of the sender as 802—0000—5, and set forth the weight of the package as between one and two pounds. The name and address of the recipient were listed as Steve Johnson, 1903 North Church Street.

Hulbert also identified copies of two other hold for pickup manifests dated January 18, 1984, and December 10, 1983. Hulbert testified that she did not fill out these manifests and was not involved in the underlying transactions, but she recognized the handwriting on them as that of other customer service agents she worked with. Each manifest was signed by defendant. In each case the customer service agent had written down that the package weighed between one and

two pounds, and that it was addressed to Steve Johnson at 1903 North Church Street. In the case of the January transaction the agent set out the account number as 802—0000—5, and on the other manifest the sender was listed as Pro Lab in Denver. According to Hulbert, the customer service agents would have obtained the information they wrote down on the manifests from the air bills.

On cross-examination Hulbert stated that the Federal Express office was located in the southeast quadrant of Winnebago County. She said that before defendant asked her if he could meet the truck driver along his route to pick up the package, she had told defendant that the truck was on the north side of Rockford.

James O'Connor testified that the package defendant picked up on March 1, 1984, which was seized by the policy, contained two "ziplock-type" plastic bags. One of the bags contained 112.4 grams of white powder, and the other contained 27.8 grams. The powder in each bag contained cocaine at a purity of 66% by weight. The margin of error in the determination of purity was plus or minus 10%.

Garcia and Trego testified that they arrested defendant immediately after he left Federal Express and got into his car, a 1979-model silver Mazda. Trego seized the package from the right front floorboard. The package had not been opened and was still sealed with tape. Garcia and Trego took the box to their office and opened it. Inside were the two plastic bags which O'Connor later examined along with some crumpled newspaper from the February 28, 1984, edition of Denver's Rocky Mountain News. The car defendant was driving was impounded. Police determined that it belonged to defendant's girl friend. No drug paraphernalia was found in the car.

Trego also testified that "street sellers" normally sell cocaine in one-gram amounts to the "street user" at an average price of $100. He stated that the purity of the cocaine at that level of distribution is about 20%. Finally, Trego testified that the street value of the cocaine seized in this case was approximately $42,000.

The defense presented one witness, Bernice Johnson, defendant's mother. She testified that she lived at 3614 Seventh Avenue in Rockford. She was a widow. Her husband, Bud, died on January 27, 1984. In 1983 Bud had an automotive repair shop and sold used cars. Defendant and his brother, Mike, were also involved in the business.

In the fall of 1983 the business failed, and Bud lost his life savings. Defendant went to Colorado to seek employment. Seven years previously he had lived in Colorado and worked for Sundstrand. When he got out to Colorado, defendant stayed with Dave Roarke, one of his boyhood friends.

Bernice testified that defendant returned to Rockford a few days before her wedding anniversary on December 12, 1983. He stayed with her and her husband for about a week and then returned to Colorado.

Bernice stated that defendant returned to Rockford about January 18, 1984. She had asked him to come to try to cheer up Bud who was very despondent over the business failure. Defendant stayed at the family home. Bernice testified that sometime after he returned, defendant came home with a package from Federal Express. Bernice saw that the package came from Denver. Defendant took it to the kitchen table and opened it. Inside were some family photographs and a watch that Bud had given defendant. He said, "Mom, let's cheer dad up," and he took the pictures into the living room and looked at them with Bud.

On cross-examination Bernice testified that, except for the two periods of time defendant was in Denver, he stayed with her at 3614 Seventh Avenue. She said that the package defendant brought into the kitchen was addressed to him at that address. She said that she saw the package closely enough to be sure of that fact. On redirect examination, she stated that she did not "study" the address.

It was based on the evidence recounted above that the jury found defendant guilty, and defendant's contentions of error must be considered in that context. His first argument is that the trial court should have excluded the evidence about his receipt of packages at the Federal Express office prior to March 1, 1984. He acknowledges that if the State had proved that those packages contained cocaine, the evidence would have been admissible to show knowledge on his part that the package he picked up on March 1, 1984, contained cocaine, and to show design or system. (See *People v. Cole* (1963), 29 Ill. 2d 501, 503, 194 N.E.2d 269.) He maintains, however, that where the State failed to prove that the prior packages contained contraband, the evidence should not have been admitted.

■ The evidence demonstrated that over a period of four months defendant received four packages at Federal Express from the same sender, each package weighing between one and two pounds. Because proof of the contents of the first three was not offered, this did not constitute evidence of other crimes. It was properly admitted as circumstantial evidence tending to show knowledge or design on the part of defendant.

■ In any event we agree with the State that the admission of the evidence was harmless error. At the trial of this case the State was required to prove that defendant possessed the cocaine, *i.e.*, had

exclusive and immediate control over the drug and knowledge of its presence (*People v. Green* (1977), 52 Ill. App. 3d 636, 367 N.E.2d 1061), and that he intended to deliver it. These elements were overwhelmingly established by the evidence that was properly admitted. There is no question that when he was arrested, defendant had exclusive and immediate control over the drug.

His knowledge of its presence was shown by the amount of the drug, and his statements to Hulbert. The cocaine sent to defendant had a street value of $42,000. It is highly unlikely that someone would ship an illegal drug of such high value to another person without informing him that it was coming. The evidence is undisputed that when defendant called Hulbert at 9:30 or 10 a.m., he told her that he really needed the package, and that at 2 p.m. when she told him the package was at the office, he replied that that was good, and that he could go on with his daily business. These statements clearly show that defendant knew what was in the package.

Finally, defendant's intent to deliver was clearly proved by the amount and purity of the drug, which were shown to be in excess of that normally intended for personal use (See *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 432 N.E.2d 370), and by defendant's statement when informed that the package was available to the effect that he could go on with his daily business.

■ We next consider defendant's argument that his motion for production of microfilm was erroneously denied where the State introduced enlargements of business records stored on the microfilm. Before addressing the merits of this contention, we must consider the State's argument that this issue was not properly preserved for review. The State acknowledges that defendant filed a written motion for production of the microfilm, but it argues that the issue was not raised thereafter at trial or in the post-trial motion. This argument is not well taken. Paragraph 11 of defendant's post-trial motion provided:

> "*The Court erred in denying the Defendant's motion to compel reproduction documents* [sic] wherein the Defendant prayed the Court enter an Order enjoining and prohibiting the State from introducing certain documents into evidence which purported to be Federal Express records for the purpose of showing that the Defendant had picked up packages from the Federal Express Company in Rockford, Illinois on occasions prior to March 1, 1984. The Defendant alleged in his *Motion to Compel Production of Reproduction Documents*, that the facsimile documents which the State intended to produce were not the same as ei-

ther the original business records or the reproduction of said original business records of the Federal Express Company." (Emphasis added.)

While this paragraph could have been phrased more clearly, we believe that it referred to the court's denial of defendant's motion for production of the microfilm, and the issue was, therefore, preserved for review. See *People v. White* (1984), 129 Ill. App. 3d 308, 472 N.E.2d 553.

Defendant based his request for production on section 115—5(b) of the Code of Criminal Procedure of 1963, which provides, in pertinent part:

"If any business *** in the regular course of business *** has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence, or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is required by law. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any proceeding whether the original is in existence or not and an enlargement or facsimile of such reproduction is likewise admissible in evidence *if the original reproduction is in existence and available for inspection under direction of court.* ***" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 115—5(b).)

We agree with defendant that this statute confers on the accused a right to inspection of the original reproduction. See *People v. Mormon* (1981), 97 Ill. App. 3d 556, 565, 422 N.E.2d 1065, *aff'd* (1982), 92 Ill. 2d 268, 442 N.E.2d 250.

In our judgment, however, that right, like all of defendant's rights to discovery, must be exercised in a timely fashion. In *People v. Robinson* (1973), 13 Ill. App. 3d 506, 301 N.E.2d 55, the defendant sought reversal of his conviction of involuntary manslaughter resulting from an automobile accident on the basis that the trial court had refused to order the production of an alcohol influence report written by a police officer. The request for production had been made at trial during the cross-examination of the officer. In reviewing defendant's contention, the appellate court stated:

"The granting or denial of a continuance to obtain evidence

or procure a witness is within the discretionary powers of the trial court. [Citation.] When reviewing the exercise of the court's discretion, this court must determine whether defendant had acted diligently in his attempts to obtain the evidence [citation], whether the evidence would be material to the case and might affects its outcome [citation], and whether defendant has been prejudiced in his right to a fair trial. [Citation.]" (13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57.)

The appellate court approved the trial court's ruling, based on defendant's lack of diligence, and on the basis that the report could not have affected the outcome of the case.

■ We believe that the same result should be reached here. Defendant did not request production until the first day of the second trial. He attempts to justify his failure to make an earlier request on the basis that at the first trial, the court granted his motion to exclude the evidence regarding the prior packages, and that that decision was not reversed until the first day of the second trial. Those circumstances, however, do not explain why he did not seek production of the microfilm prior to the first trial. Defendant did not know until the first day of the first trial whether or not the court would admit the evidence regarding the prior packages. The matter should have been resolved before then. Moreover, based on our discussion of the harmless error question above, we do not believe that production of the microfilm would have affected the outcome of the case. Accordingly, the denial of the motion for production was not reversible error.

■ Defendant's final contention is that the trial court erred by denying his motion for continuance made on the first day of the second trial, in which he sought additional time to prepare for the evidence regarding the prior packages. A motion for continuance is addressed to the sound discretion of the trial court and will be considered in the light of the diligence shown on the part of the moving party. (*People v. Kane* (1980), 81 Ill. App. 3d 641, 401 N.E.2d 1310.) What we stated above in regard to defendant's lack of diligence in preparing for this evidence is equally applicable here. In light of that lack of diligence, the ruling of the trial court was well within the bounds of its judicial discretion.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

NASH, P.J., and HOPF, J., concur.