THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY L. DAVIS, Defendant-Appellant.

Fourth District   No. 4—92—0369

Argued February 17, 1993.—Opinion filed August 12, 1993.

Gregory L. Barnes (argued), of Gregory L. Barnes, Ltd., of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Dale M. Wood (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

A jury found defendant Terry Davis guilty of unlawful delivery of a controlled substance within 1,000 feet of property owned by a public housing agency. (Ill. Rev. Stat. 1991, ch. 56½, par. 1407(b)(2).) The trial court sentenced defendant to eight years of imprisonment. Defendant appeals, alleging (1) the trial court improperly admitted evidence of other similar drug offenses allegedly involving him, (2) the "other offenses" jury instruction given was incorrect and plain error (see Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d)), and (3) the trial court erred by *sua sponte* instructing the jury before opening arguments concerning its function. We affirm.

Both defendant, Terry Davis, and his uncle, Gregory Davis (hereinafter Gregory), were charged. Gregory pleaded guilty and was sentenced to the Department of Corrections (DOC). Prior to trial defendant filed a motion *in limine* requesting the trial court prohibit the State from introducing evidence of other unindicted drug-related offenses allegedly involving defendant. The trial court denied the motion and the jury trial commenced on March 18, 1992.

The testimony revealed defendant's arrest on November 20 was the result of an undercover operation involving "marked" money. Sergeant Gary Rollings of the Illinois State Police testified he was assigned to Task Force 10, the Decatur narcotics task force. Rollings photocopied money to be used in a staged drug buy from suspects and gave the money to the undercover officers who would buy the cocaine.

Scott Swan, an investigator with the Champaign County sheriff's department, was working undercover on November 20. He drove through the 500 block of East King Street and saw a group of four men. He spoke to one of the men, Gregory, about buying a "rock," referring to crack cocaine. Gregory said he had powder cocaine, agreed to make a sale, and told Swan to drive around the block. Swan did so and, upon his return, purchased cocaine from Gregory. Swan spoke only to Gregory and dealt only with Gregory. Swan could not identify the other three men standing around when the deal was made. Vernon Frost, an inspector with the Illinois State Police, rode with Swan during the undercover operation and basically corrobo-

rated Swan's testimony. Frost also could not identify the other three men.

Patrick McElroy (Patrick), a Decatur police officer surveilling the scene from a block away, testified he received a radio call that the "deal had gone down." He arrived at 555 East King Street in less than three minutes and saw defendant standing in front of a van holding currency in his hand. Four other people were also standing near the van. Patrick took the money from defendant's hand and was able to match the serial numbers on the money with the previously copied serial numbers. He then placed defendant under arrest. Decatur police officer Jerry Wagoner testified the officers seized $592 from defendant.

Richard McElroy, a member of the tactical unit in the Decatur police department, testified he set up surveillance on November 20 approximately 75 feet from 555 East King Street. He was able to identify defendant as one of several men standing around in the area. McElroy saw some of the men approach the undercover vehicle after it had circled the block, then saw them walk back to the sidewalk before McElroy was given the signal to move into the area.

Outside the presence of the jury the State made an offer of proof regarding prior surveillance by Richard McElroy. The trial court admitted the evidence over defendant's objection, but gave a limiting instruction, both before and after its presentation, stating the evidence was offered only to show defendant's intent or knowledge. Richard McElroy testified he had surveyed the area of 555 East King Street on approximately 15 separate occasions before the transaction on November 20. McElroy saw defendant at this location 10 to 12 times during his surveillance and saw both defendant and Gregory there together six to eight times. On the occasions when defendant and Gregory were both present at 555 East King Street, McElroy observed their involvement in hand-to-hand exchanges with people who approached them. Defendant would typically sit on a bench in front of the property near a fire barrel. A person would walk up to the area and hand defendant something. The person would then walk over to where Gregory was standing on the opposite side of the fire barrel, Gregory would hand something to him, then the person would leave the area. McElroy saw an estimated 25 hand-to-hand transactions involving various individuals and both defendant and Gregory. At times McElroy was able to see money exchanged. He testified he could not remember all of the surveillance dates but thought he began surveillance in September. McElroy stated he made only four reports from the approximately 15 surveillances. McElroy stated he filed two re-

ports on November 8 and reports on November 10 and 12. He admitted defendant's name was not on the November 8 or 10 report, and recalled defendant being present on only three of those occasions. McElroy said reports were made on those dates because subjects leaving the area were subsequently stopped and arrested.

The trial judge also admitted the State's evidence of two specific drug transactions on August 23 and October 1 involving defendant in the 500 block of East King Street. The judge again gave a limiting instruction that the evidence was only to be considered for the purpose of knowledge or intent of defendant. In the first transaction, Patrick McElroy testified he met with an informant, Rodney Brady, on August 23, 1991, about 1:30 p.m. Patrick gave Brady money for a controlled buy of cocaine from defendant. The jury was shown a videotape of the transaction between Brady and defendant taken by Decatur police officer Edward Root. Brady basically corroborated Patrick's testimony.

The second transaction occurred on October 1, 1991, also around 1:30 p.m. with Brian Latham, special agent with the Illinois State Police, and paid informant Willie Stewart. Latham and Stewart were involved with a purchase of cocaine from defendant and an individual named Tony Kinney at the same area on East King Street. Latham testified at trial that "Mr. Davis [defendant] stated it would be straight dope we are going to receive and that his boy would be out of the house in a couple of minutes with the dope." Stewart also spoke to defendant for approximately one to two minutes. Defendant said that Kinney would take care of Stewart. Kinney brought the cocaine and defendant directed Latham and Stewart to the parking lot for the transaction. Stewart then made a hand-to-hand purchase from Kinney. Defendant stood about 40 feet away. Patrick McElroy testified that he conducted surveillance of this transaction and made the videotape which was presented to the jury.

Defendant called as his first witness Shelley Creek, an employee from the Macon County circuit clerk's office, who testified that a bond refund check for $400 had been issued to defendant on November 14, 1991, and cleared the circuit clerk's account on November 20. Terry Theus then testified defendant gave him a ride to 555 East King Street on October 1, 1991, the day defendant allegedly was involved in the cocaine sale to Latham and Stewart. Theus identified himself in the surveillance videotape taken that day by Officer McElroy. Theus said he and defendant left the area 15 minutes later in a car. He never heard defendant say anything about drugs or saw defendant involved in any drug transactions. Jake Eubanks testified

that on November 20 he was at 555 East King with Gregory, defendant, and others. They were shooting craps and drinking beer. He stated that Gregory left the craps game a couple of times to talk to a man down the street. Eubanks stopped playing when he saw two white men approaching. The men turned out to be police officers who subsequently arrested defendant.

Gregory testified that defendant is his nephew. Gregory stated that he did not work with defendant when selling drugs and that defendant had not been involved at all in the drug transactions. Gregory stated he bet the money he received from the November 20 drug sale in the craps game going on in the yard. Richard McElroy, called on rebuttal, testified he is familiar with the game of shooting craps and the subjects he had under surveillance did not appear to be playing craps.

On appeal, defendant argues the trial court denied him a fair trial in erroneously permitting evidence of other drug transactions allegedly involving him. Generally, evidence showing that a defendant committed prior bad acts is improper where its purpose is to demonstrate the defendant's propensity to commit crime. (*People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519; *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 824.) This evidence is commonly referred to as "other offenses" evidence or "extrinsic acts" evidence; it includes not just acts which constitute criminal offenses but any bad or wrongful acts. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 190 (5th ed. 1990); see Fed. R. Evid. 404(b).) Evidence of other offenses is admissible if it is relevant to establish any material question other than to show propensity to commit crime. (*McKibbins*, 96 Ill. 2d at 182, 449 N.E.2d at 824; *People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860.) Erroneous admission of other offenses evidence carries a high risk of prejudice and generally calls for reversal. (*People v. Mason* (1991), 219 Ill. App. 3d 76, 80, 578 N.E.2d 1351, 1354; *People v. Lindgren* (1980), 79 Ill. 2d 129, 140, 402 N.E.2d 238, 244; *cf. People v. Easley* (1992), 148 Ill. 2d 281, 324, 592 N.E.2d 1036, 1055 (improperly admitted evidence of defendant's gang membership did not amount to substantial prejudice).) Before admitting evidence of other offenses the trial court must balance its probative value against any prejudicial effect. (*People v. Vazquez* (1989), 180 Ill. App. 3d 270, 277, 535 N.E.2d 981, 985.) A trial court's decision concerning admission of evidence of prior offenses rests in the court's discretion and will not be disturbed absent an abuse of that discretion. (*Vazquez*, 180 Ill. App. 3d at 278-79, 535 N.E.2d at 986-87.) Such an abuse of discretion will be found only where the trial

court's decision is arbitrary, capricious, or unreasonable or where no reasonable person would take the view of the trial court. *Illgen*, 145 Ill. 2d at 364, 583 N.E.2d at 519.

An important element of the State's case was proof that defendant took part in the sale of cocaine, despite the fact he did not personally handle the sale or touch the drugs. Defense counsel indicated in his opening statement the evidence would show Gregory acted alone and defendant had nothing to do with the drug deal. The evidence of defendant's sales to Brady on August 23 and to Stewart on October 1 was relevant to refute defendant's claims; the trial court did not abuse its discretion in admitting that evidence. Other crimes evidence may not be used to show intent or motive when intent or motive is not an issue in the case. Although a defendant cannot foreclose the prosecution from producing evidence of intent or motive through other crimes evidence simply by not presenting evidence or argument regarding intent or motive, the trial court may consider whether the defendant is making an issue of intent or motive when deciding whether to admit other crimes evidence. The court may do so because it must balance the probative value of such evidence against its prejudicial effect. Here, for instance, defense counsel's assertions that Gregory acted alone and that defendant had nothing to do with drug sales made it easier for the trial court to exercise its discretion and rule that the other crimes evidence was admissible.

Defendant argues that the various transactions were different: that he is alleged to have *negotiated* the sales on August 23, October 1, and the 25 other occasions but not on November 20; that he or someone other than Gregory is alleged to have *delivered* the drugs on August 23 and October 1 but not on November 20; and that defendant is alleged to have *received* the purchase money on August 23 and the 25 occasions, but not on November 20. With all these incidents, however, defendant was always the one who ended up with the money. In contrast to *modus operandi* testimony, if evidence of a defendant's involvement in another offense is offered to prove absence of an innocent frame of mind or the presence of criminal intent, mere general areas of similarity will suffice. *Illgen*, 145 Ill. 2d at 373, 583 N.E.2d at 523.

Richard McElroy's testimony of 15 prior surveillances where he observed perhaps 25 hand-to-hand exchanges involving various individuals and both defendant and Gregory is more difficult. Although money sometimes changed hands, there was no positive evidence that defendant or anyone else actually sold drugs on any of these occasions, and it is possible that drugs were not sold.

Although the prosecution in a criminal case must prove every element of the offense beyond a reasonable doubt (*People v. Tye* (1990), 141 Ill. 2d 1, 15, 565 N.E.2d 931, 938, *cert. denied* (1991), 502 U.S. 833, 116 L. Ed. 2d 81, 112 S. Ct. 112), that is not true for each item of evidence which the prosecution seeks to introduce. (*People v. Williams* (1982), 93 Ill. 2d 309, 322-23, 444 N.E.2d 136, 142.) To be admissible evidence need only be relevant, that is, have a tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 321-22, 362 N.E.2d 295, 296-97 (adopting Federal Rule 401 (Fed. R. Evid. 401).) The use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. Circumstantial evidence will suffice whenever an appropriate inference may reasonably be drawn therefrom. *Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18, 21.

With some items of evidence, however, a stricter foundation requirement is imposed, because of that evidence's potential for unfair prejudice. Extrinsic acts evidence is admissible if it is relevant for any purpose other than to show propensity to commit a crime. However, before extrinsic acts evidence is admitted the State must first show that the acts in question occurred and that the defendant performed them or participated in their performance. Proof that the defendant performed the acts or participated in their performance need not be beyond a reasonable doubt but must be more than a mere suspicion. (*People v. Thingvold* (1991), 145 Ill. 2d 441, 456, 584 N.E.2d 89, 95; *People v. Lindgren* (1980), 79 Ill. 2d 129, 140, 402 N.E.2d 238, 244 (other crimes evidence cannot be admitted if the grounds for establishing its relevance are speculative).) Other jurisdictions have employed different standards of proof. "The measure of proof that the defendant is guilty of the other crime has been variously described, ranging from 'sufficient *** to support a finding by the jury,' to 'a preponderance,' to 'substantial,' to 'clear and convincing.' " (1 J. Strong, McCormick on Evidence §190, at 809 (4th ed. 1992).) The current practice of the Federal courts is discussed in *Huddleston v. United States* (1988), 485 U.S. 681, 99 L. Ed. 2d 771, 108 S. Ct. 1496. There the Supreme Court rejected the argument that before extrinsic acts evidence could be admitted a preliminary finding by the court was required under Federal Rule 104(a) (Fed. R. Evid. 104(a)), a finding that the government had proved the act by a preponderance of the evidence.

In *Huddleston* defendant was charged with selling a large number of stolen blank tapes in April 1985. Defendant denied knowing the

tapes were stolen. The government was allowed to introduce evidence that in February 1985 defendant sold 38 new 12-inch black and white televisions for $28 apiece, and in May 1985 defendant sold stolen appliances to an undercover agent. The only direct evidence the televisions had been stolen was their low price, the large quantity sold, and defendant's inability to produce a bill of sale. The Supreme Court affirmed the admission of the evidence regarding the televisions (no objection was made regarding the appliances), but continued:

"This is not to say, however, that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. Evidence is admissible under Rule 404(b) only if it is relevant. *** In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. See *United States v. Beechum*, 582 F. 2d 898, 912-913 (CA5 1978) (en banc). In the instant case, the evidence that petitioner was selling the televisions was relevant under the Government's theory only if the jury could reasonably find that the televisions were stolen." *Huddleston*, 485 U.S. at 689, 99 L. Ed. 2d at 782, 108 S. Ct. at 1501.

In *People v. Smith* (1990), 141 Ill. 2d 40, 565 N.E.2d 900, an assistant warden at Pontiac was killed outside a tavern in Chicago. The prosecution presented evidence of motive: the warden was opposed to gang activity and had physically subdued a gang leader while the leader was in prison, defendant was a member of the gang, and the gang leader had spoken to one of defendant's companions just before the murder. The supreme court held that evidence of gang membership is admissible to show motive, but only where there is sufficient proof that such membership is related to the crime charged. The court held the evidence in *Smith* insufficient to show defendant was an active member of the gang or acting at the direction of the gang leader, even though defendant had been seen in the leader's apartment, the gang was influential in the tavern neighborhood, and defendant was talking with the gang leader at the time of defendant's arrest. (See also *Easley*, 148 Ill. 2d 281, 592 N.E.2d 1036; *People v. Lucas* (1992), 151 Ill. 2d 461, 486, 603 N.E.2d 460, 471.) In *Thingvold* a husband was charged with soliciting George Nalan to murder his wife, who was stabbed to death on March 10, 1987, by an unknown assailant. The supreme court ruled testimony was properly admitted that the husband had discussed killing his wife, by stabbing her, with Sidney Haffendon between 1980 and 1986, and with James Wagaman.

The court, however, excluded evidence the wife was previously stabbed numerous times by an unknown assailant on April 26, 1986, saying the testimonies of Haffendon and Wagaman were "not enough to raise defendant's participation in the attack beyond a mere suspicion." (*Thingvold*, 145 Ill. 2d at 456, 584 N.E.2d at 95.) Chief Justice Miller, dissenting, would have admitted evidence of the April 26 stabbing because the fact the wife was attacked in a manner suggested by the husband "raises more than a mere suspicion that the defendant was accountable for that offense." (*Thingvold*, 145 Ill. 2d at 466, 584 N.E.2d at 100 (Miller, C.J., dissenting).) Justice Miller also dissented in *Smith*.

■ There was no direct evidence that on the 25 occasions testified to by Richard McElroy defendant and Gregory were selling drugs. The direct evidence was that on those occasions someone would hand defendant something (sometimes McElroy was able to see money exchanged), and then walk over to Gregory and receive something from him. As the court said in *Huddleston*, however, the jury was required to consider not just this direct evidence, but also defendant's involvement in the other transactions: the transaction charged, the August 23 incident, and the October 1 incident. "Given this evidence, the jury reasonably could have concluded that [drugs were being sold on the 25 occasions], and the trial court therefore properly allowed the evidence to go to the jury." (*Huddleston*, 485 U.S. at 691, 99 L. Ed. 2d at 783, 108 S. Ct. at 1502.) There was more than a suspicion that drugs were being sold on the 25 occasions. (See *Thingvold*, 145 Ill. 2d at 456, 584 N.E.2d at 95.) The strength of the evidence establishing the similar act is, of course, one of the factors the court may consider in determining whether the prejudicial potential of the evidence substantially outweighs its probative value. (*Huddleston*, 485 U.S. at 689 n.6, 99 L. Ed. 2d at 782 n.6, 108 S. Ct. at 1501 n.6.) The evidence was sufficient to meet the foundation test for admission, and we cannot say the trial court abused its discretion in balancing the evidence's potential benefit against its potential harm.

We need not address the possibility that if something other than drugs were being innocently sold the evidence would still be admissible because it showed the connection between defendant and Gregory. It is difficult to imagine, however, why such a procedure would be employed for lawful sales. *Cf. People v. Johnson* (1986), 143 Ill. App. 3d 122, 491 N.E.2d 918 (defendant picked up package at Federal Express containing cocaine; evidence admitted that on three prior occasions he picked up packages of the same weight at the same office

from the same sender, with no evidence of the contents of those packages).

Defendant contends the State's jury instruction as to proof of other offenses, which was given by the trial court, was incorrect and plain error. (See Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d).) The jury was given the following instruction:

> "Evidence has been received that the defendant has been involved in offenses other than that charged in the information. This evidence has been received solely on the issue of defendant's intent, knowledge, *common plan or system of operation*. This evidence may be considered by you only for the limited purpose for which it was received." (Emphasis added.)

(See IPI Criminal 2d No. 3.14.) Earlier, before and after admission of the other offenses evidence, the court instructed the jury that such evidence was only to be considered on the issue of defendant's "intent or knowledge." Defendant objected to the instruction at the jury instruction conference and requested that the court limit the language to intent or knowledge. Defendant contends the court erred by "expanding" the written jury instruction under IPI Criminal 2d No. 3.14 to also include "common plan or system of operation."

■ The trial court must take care to state the proper limited purpose for other crimes evidence. (See, *e.g., People v. King* (1988), 165 Ill. App. 3d 464, 469, 518 N.E.2d 1309, 1313.) We find that the judge erred in including "common plan or system of operation" in the written instruction. The evidence of drug transactions here did not amount to a common plan or system of operation as it did not show a larger criminal scheme of which the crime charged was only a portion. (*People v. Rooney* (1934), 355 Ill. 613, 190 N.E. 85 (extortion plan leading to murder); *People v. Rodriguez* (1982), 107 Ill. App. 3d 43, 437 N.E.2d 441 (other forged checks stolen in same burglary); *People v. Willis* (1983), 119 Ill. App. 3d 34, 456 N.E.2d 165 (two crimes committed to obtain gasoline for trip to Oklahoma).) The offenses were similar but were not closely connected in time and place, nor was one committed in preparation for the other. The evidence was clearly admissible, however, and although the reference to common design and system of operation may have been confusing, we cannot see how it prejudiced defendant. See *People v. Leaks* (1989), 179 Ill. App. 3d 231, 241, 534 N.E.2d 491, 497.

Defendant's last argument is that the trial judge erred by making *sua sponte* comments to the jury, concerning its function, before open-

ing statements. Defendant specifically complains of the judge's reference to questions asked by defense counsel during jury selection:

"Now, before we start off with opening statements, I would like to make just a couple of comments to the jurors. Mr. Barnes (defense counsel), when he was asking questions, he said you know some of the witnesses might testify to A and some of the witnesses might testify to B. A couple of years ago, we had a note come back from the jury, and the note basically said, [']Judge, these people testified to A; these people testified B. There seems to be some conflict in the testimony.['] That's what your function is. You were selected by the attorneys to listen to the evidence in the case and decide what you feel the facts are, and Mr. Barnes has indicated that there might be a difference in testimony. You, as jurors, will weigh the believability of a witness. You can believe everything a witness says, and you can believe part of what a witness says, or you can believe nothing of what a witness says, but we do want you to listen carefully."

Defendant contends such comments drew attention to defense counsel's questions and had the effect of criticizing the defendant or the nature of defense counsel's inquiry. It is appropriate for a trial court to give informal instructions at an early stage of the proceedings as to the functions of the court and jury. Such instructions may assist jurors in understanding and evaluating the evidence which will be presented to them. Of course the informal instructions should be impartial and not slanted toward one side or the other. An informal instruction which substantially employed the language set out in IPI Criminal 2d Nos. 1.01 through 1.04 would be appropriate. In the present case, although the trial court's remarks could have been improved upon, it is difficult to see how these comments prejudiced defendant or drew unfavorable attention to defense counsel. The trial judge was simply using defense counsel's questions as an example to show conflicting testimony would be presented and that it was the jury's responsibility to decide the truth.

Affirmed.

STEIGMANN, P.J., and KNECHT, J., concur.