2021 IL App (1st) 191363-U

FIRST DISTRICT,
FIRST DIVISION
November 8, 2021

No. 1-19-1363

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 18 CR 15982 |
| | ) | |
| ALEX REYNOLDS, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Evidence was sufficient to convict defendant of forgery. (2) Other-crimes evidence was properly introduced to show defendant's criminal intent, absence of mistake, and consciousness of guilt. (3) State established a proper chain of custody over counterfeit concert tickets that defendant was charged with selling. (4) Defendant's Confrontation Clause rights were not violated since no statement of a nontestifying party was introduced against him.

¶ 2    Following a jury trial, defendant Alex Reynolds was convicted of forgery for selling counterfeit concert tickets to Catherine Popp. On appeal, he argues that (1) the evidence was insufficient to convict him, (2) the trial court erroneously introduced other-crimes evidence

against him, (3) the State failed to establish a proper chain of custody over the counterfeit tickets, and (4) his Confrontation Clause rights were violated. For the reasons that follow, we affirm.

¶ 3                                                    BACKGROUND

¶ 4        On the morning of October 22, 2018, Popp was interested in purchasing four tickets to a Phil Collins concert being held at the United Center that evening. After determining that the seats she wanted were not available on Ticketmaster, she found an advertisement on Craigslist posted by "Charles Sneed" for four tickets at $200 apiece. She emailed the seller, negotiated a sale price of $500 for all four tickets, and agreed to meet him at the Potbelly located on Madison Street at 10:45 a.m.

¶ 5        Popp arrived at Potbelly first and sat down in a booth. The seller texted her that he was wearing a neon work coat. A man later identified as the defendant entered the restaurant wearing a neon work coat, identified himself as Charles Sneed, and produced the four tickets along with a verified Ticketmaster proof of purchase. Popp gave him $500 in cash and left. The entire exchange took around five minutes.

¶ 6        When she returned to her office, Popp checked the fine print on the back of the tickets and noticed references to baseball (misspelled "basebal"), football, and Soldier Field stadium. Since the seller's advertisement was still posted on Craigslist, she asked her coworker Ian to inquire about the same tickets. (Popp's coworker was known only as "Ian," was not identified by police, and did not testify at trial.) Ian emailed the seller, who agreed to meet him at the Dunkin Donuts located at Lake and Wells.

¶ 7        Ian left for Dunkin Donuts and Popp called the police. Officer De Zhao and his partner Officer Grabowski responded and took Popp in their squad car to Dunkin Donuts. Shortly after they got there, defendant walked past the squad car, and Popp immediately recognized him.

¶ 8 Zhao, Grabowski, and Popp exited the squad car. Zhao made eye contact with defendant and told him to "come over here." Defendant fled. Zhao gave chase on foot but lost sight of him. Over his police radio, Zhao described defendant and the direction in which he was fleeing. Approximately four minutes later, Zhao went to 172 West Madison and saw a different set of officers putting defendant into a squad car.

¶ 9 Defendant was taken back to Dunkin Donuts, where Popp identified him as the person who sold her the four fake tickets. Popp gave three of the tickets to Grabowski and kept the fourth one. That evening, Popp unsuccessfully attempted to enter the concert using the fourth ticket. At around 8:10 p.m., she discovered the Craigslist ad had been deleted.

¶ 10 At the police station, four Phil Collins concert tickets were found in defendant's jacket. Those tickets were inventoried with the three tickets received from Popp. At trial, all seven tickets were introduced into evidence as a single exhibit (State's Exhibit 7). Popp identified three of the tickets—for seats 3, 4, and 5 in row 9 of section 112—as the tickets she gave to Grabowski and stated that the other four tickets included "duplicates of these same seats." Zhao confirmed that the tickets in State's Exhibit 7 were in the same condition as when he saw them on the date of the offense.

¶ 11 Matthew Shipley, the senior manager of premium ticketing at the United Center, testified that he routinely sees fake tickets in his position. He determined that the tickets in State's Exhibit 7 were fake for several reasons: the event codes were invalid, the price was incorrect, the seating information was inconsistent with other information on the ticket, the text on the back about football and baseball was not related to United Center events, and the Ticketmaster proof of purchase was invalid. Shipley agreed that "an amateur would not necessarily be able to tell at first glance that [the tickets were] real or fake."

¶ 12        During closing arguments, the State asserted that the "biggest piece of evidence" against defendant was the fact that he ran away from the police, showing his consciousness of guilt. The State further argued that the four tickets recovered from defendant's coat were for the same section, row, and seats as the tickets that he sold earlier that day to Popp, "[a]nd the defendant can't get away from that." Defense counsel responded that there was no evidence that defendant knew the tickets were fake, and he was merely a "patsy" and a "fall guy" for the "ringmaster" who deleted the Craigslist advertisement after defendant was taken into custody. According to counsel: "One glance, and you can see that this ticket is not capable of defrauding anybody."

¶ 13        Defendant was found guilty of forgery and sentenced to 37 months' imprisonment followed by 1 year of mandatory supervised release.

¶ 14                                              ANALYSIS

¶ 15                                    Sufficiency of the Evidence

¶ 16        Defendant argues that the evidence was insufficient to convict him of forgery because the tickets that he sold Popp were obviously fake and could not deceive a reasonable person.

¶ 17        In reviewing the sufficiency of the evidence, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the jury's province to resolve conflicts in testimony, weigh evidence, and draw inferences from the evidence, and we will not substitute our judgment on these matters. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 18        The forgery statute under which defendant was convicted provides, in relevant part:

              "(a) A person commits forgery when, with intent to defraud, he or she knowingly:

(1) makes a false document or alters any document to make it false and *that document is apparently capable of defrauding another*." (Emphasis added.) 720 ILCS 5/17-3(a) (West 2016).

"[T]he test of whether a forged document is apparently capable of defrauding another is whether a reasonable person might be deceived into accepting the document as genuine." *People v. Brown*, 2013 IL 114196, ¶ 39.

¶ 19 Here, Shipley testified that despite the tickets' flaws, a layperson without experience in the ticketing industry might at first glance believe them to be genuine. The front of the tickets displays Phil Collins' name, the name of his concert tour, an event code, a bar code, seating arrangements, and the United Center, and only in the fine print on the back of the tickets are there references to football, "basebal," and Soldier Field. More importantly, the actual tickets were presented to the jurors to determine whether they were capable of defrauding a reasonable person. It is not our place to second-guess that determination. *Siguenza-Brito*, 235 Ill. 2d at 224-25. Under these facts, the jury reasonably found defendant guilty of forgery beyond a reasonable doubt.

¶ 20 Other-Crimes Evidence

¶ 21 Defendant next argues that the trial court erred by permitting the introduction of other-crimes evidence, namely, (1) the four counterfeit tickets recovered from his jacket after his arrest, (2) evidence that he had arranged to sell those tickets to Ian, and (3) evidence that he ran from police. The State argues that this evidence was properly introduced to show defendant's knowledge that the tickets were fake, his complicity in the plan to sell the fake tickets, and his consciousness of guilt.

¶ 22 Although other-crimes evidence may not be introduced to show a defendant's propensity to commit crimes, it may be introduced for any other purpose for which it is relevant, including *modus operandi*, intent, identity, motive, or absence of mistake. *People v. Chapman*, 2012 IL 111896, ¶ 19; *People v. Wilson*, 214 Ill. 2d 127, 135-36 (2005). Such evidence will not be admitted if its prejudicial impact "substantially outweighs" its probative value. *Chapman*, 2012 IL 111896, ¶ 19. Admission of other-crimes evidence rests within the sound discretion of the trial court and shall not be disturbed absent an abuse of that discretion. *Wilson*, 214 Ill. 2d at 136.

¶ 23 Defendant was charged with selling four counterfeit tickets to Popp, but the other tickets recovered from him were probative of his criminal intent and absence of mistake. Having multiple copies of the same tickets increased the likelihood that he knew he was selling counterfeit tickets and was not a "fall guy" for an unknown "ringmaster" [1] and also corroborated his identity as the seller. Evidence that defendant attempted to sell more fake tickets to Ian was also admissible to show criminal intent (defendant agreed to sell the same tickets) and identity (Popp and Ian both used the same contact information from the Craigslist ad to get in touch with defendant).

¶ 24 In *People v. Davis*, 248 Ill. App. 3d 886, 888 (1993), an undercover investigator used marked bills to purchase cocaine from defendant's uncle Gregory. Less than three minutes later, another officer arrived on the scene, found defendant holding the marked bills, and arrested him. *Id.* at 889. At defendant's trial for delivery of a controlled substance, the defense argued that Gregory acted alone and defendant had nothing to do with the drug deal. *Id.* at 892. The State called an officer to testify that over a three-month period, he observed roughly 25 hand-to-hand

---

[1] We note in passing that defendant's trial arguments were contradictory: he claimed that the tickets were so obviously fake they did not legally constitute forgeries, but also that he was not aware he was selling fake tickets.

transactions involving various individuals and both defendant and Gregory. *Id.* at 889. The State also introduced testimony about two specific drug transactions involving defendant. *Id.* at 890. We held that this other-crimes evidence was relevant to show intent and motive and refute defendant's contention that he had nothing to do with the drug deal. *Id.* at 892. Likewise, evidence of Popp and Ian's sting operation and the four duplicate tickets refutes defendant's contention that he was a "patsy" who had no idea that he sold Popp fake tickets.

¶ 25    Additionally, defendant's flight from the police showed his consciousness of guilt. Flight "is generally considered some evidence of a guilty mind" and, in combination with other evidence, may support a finding of criminal activity. *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64. A reasonable finder of fact could have inferred from defendant's flight that he knew he had committed a crime.

¶ 26                                    Chain of Custody

¶ 27    Defendant argues that the State failed to establish a proper chain of custody for admission of State's Exhibit 7 (comprising the three tickets that Popp gave to Grabowski and the four tickets recovered from defendant's person). A proper foundation requires either (1) having a witness identify the item or (2) establishing a chain of custody over the item. *People v. Winters*, 97 Ill. App. 3d 288, 289 (1981).

¶ 28    If the item is readily identifiable and has unique characteristics that are not easily subject to change, then it is sufficient for a witness to testify that the item is the one in question and is substantially unchanged. *Id.*; *People v. Wilson*, 2017 IL App (1st) 143183, ¶ 25. If the item is not readily identifiable or susceptible to tampering or contamination, then a chain of custody foundation is required. *Winters*, 97 Ill. App. 3d at 289. Such items include drug evidence (*e.g.*, a bag of cocaine), ballistic evidence (*e.g.*, recovered bullets and cartridge cases), and biological

evidence (*e.g.*, a blood sample). *Wilson*, 2017 IL App (1st) 143183, ¶ 26 (collecting cases). "The chain of custody must be of sufficient completeness to render it improbable that the item has either been exchanged with another or contaminated or tampered with." *Winters*, 97 Ill. App. 3d at 290.

¶ 29   These tickets were unique and readily identifiable. After positively identifying the tickets, Popp testified they were in the same or substantially similar condition as when she handed them over to police. Her testimony laid a proper foundation for admission into evidence.

¶ 30   The record refutes defendant's claim that Popp could not identify which of the seven tickets she received from him. After the State showed State's Exhibit 7 to Popp, she testified as follows:

> "ASA: Can you try to separate the tickets that you believe you gave the police?
>
> Popp: These are the three I believe I gave to the police, and these are the four that I did not."

The court then directed the ASA, "Don't commingle those," indicating that the three tickets had, in fact, been separated from the others.

¶ 31   The State also established a chain of custody over the tickets. Zhao testified that he saw Popp give Grabowski three tickets, keeping the fourth for herself. Later that day, Zhao searched defendant's jacket and found four more tickets which he handed to Grabowski. He watched as Grabowski inventoried all seven tickets. He identified State's Exhibit 7 as the tickets that Grabowski inventoried and stated they were in the same or substantially similar condition as when he saw them on the day of defendant's arrest. This testimony renders it improbable that the tickets were either "exchanged with another or contaminated or tampered with" (*id*). The trial court properly admitted State's Exhibit 7 into evidence.

¶ 32                                    Confrontation Clause

¶ 33        Finally, defendant argues that because he was unable to confront Ian at trial, he was

denied his constitutional right to confront witnesses against him.

¶ 34        The confrontation clause of the sixth amendment to the United States Constitution (U.S.

Const. amend. VI) gives defendants the right to physically face and cross-examine those who

testify against them. *People v. Hood*, 2016 IL 118581, ¶ 19. Under *Crawford v. Washington*, 541

U.S. 36, 53-54 (2004), a defendant's confrontation rights are implicated when the State

introduces "testimonial" out-of-court statements against him. A statement is testimonial if its

primary purpose is providing evidence in a criminal prosecution or establishing a criminal

defendant's guilt. *People v. Leach*, 2012 IL 111534, ¶¶ 120-21.

¶ 35        Because no testimonial statements made by Ian were introduced against defendant at

trial, the Confrontation Clause was not violated.

¶ 36                                        CONCLUSION

¶ 37        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 38        Affirmed.