THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RAJU K. GOSWAMI, Defendant-Appellant.

Third District   No. 3—91—0200

Opinion filed November 23, 1992.

Sherri Carr, of Kankakee, for appellant.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Defendant Raju Goswami appeals from his conviction for the offense of unlawful manufacture of cannabis. After his trial by jury resulted in a verdict of guilty, defendant was sentenced to a term of 2½ years in the Illinois Department of Corrections.

The testimony at trial disclosed that two men responsible for maintenance at the westbound rest area located in Bureau County at about mile 50 of Interstate 80 were at work early on Sunday morning, November 11, 1990, when they saw a car pull into the rest area. The driver and two passengers came into the rest area building and then went back outside. One of the men returned to the car, while defendant and the third man walked across a muddy construction area behind the building and entered a cornfield by climbing over a boundary fence which separated the State property from the privately owned land to the north.

Both State's witnesses testified that they saw the two men walking in the cornfield. Richard Scott, the rest area superintendent, saw defendant picking something and putting it into something. He saw that defendant had cleaned weeds out of the fence row and that at times he walked into the rows of corn. Scott called the State Police,

and Trooper Stuart Weyforth arrived about 15 minutes later. Scott testified that the two men were in the cornfield a total of about 30 minutes.

Trooper Weyforth stopped first at the parked car and noticed a box of large brown trash bags open on the back seat. He could see two men walking back and forth in the cornfield. Accompanied by the driver of the car, the trooper started walking toward the cornfield and met the two men about midway across the construction area. Trooper Weyforth testified that defendant was wearing dark pants with mud caked on them below the knee, and his companion, David Kord, also had mud on his clothing.

Kord and defendant told the trooper they were just stretching their legs. The trooper then noticed some empty brown garbage bags on the ground behind a nearby dirt pile. Kord stated, "Those are our bags, we came out here to look for pot, but we didn't find any." At the time he made that statement, Kord was four or five feet from the trooper and only one or two feet from defendant. According to Trooper Weyforth, defendant just stood there and made no response.

The trooper then walked over behind the pile of dirt and saw another bag which was about one-half full of marijuana. As he walked back toward the three men, he asked, "Where is the rest of this?" Kord, who was still standing one or two feet from defendant, answered, "That's all there is, that's all we could find." Again, defendant said nothing.

At that point, the trooper told the three men to walk to the parking lot. They began to do so with the trooper walking with them. After one or two minutes, defendant said, "Trooper, you did not see that bag in my hand." After they reached the parking lot, the trooper told the men they were under arrest. The bag was later tested at the State crime laboratory and determined to contain 450.3 grams of cannabis.

Defendant testified in his own behalf. He said that he followed Kord to the cornfield and looked at the scenery. He saw Kord picking some plants, and after Kord told him it was marijuana, defendant urged him to stop because he would get them all in trouble. Defendant said he was especially concerned because of his prior criminal record.

According to defendant, after they met Trooper Weyforth, the men did not stand close together, and he could not hear what Kord and the trooper were saying. However, after the trooper found the bag of marijuana, defendant heard Kord say that "we picked it," and defendant says he immediately protested. Defendant stated that he

was 20 feet from the trooper and that the officer did not hear him because he was conversing with Kord. Defendant further testified that as the trooper came walking toward him, he said, "Officer, you never saw that bag in my hand and I never touched it, I never touched it."

Defendant also testified that, as the trooper told them to walk back to the car, defendant assumed they were being arrested. He stated that he again said, "Officer, I had absolutely nothing to do with this." It was defendant's recollection that only five or six seconds elapsed between the time the trooper picked up the bag of marijuana and defendant's assertion that he had nothing to do with it. Defendant insisted that he had no mud on his clothes at the time of his arrest, other than some which had splashed on his left pant leg when he jumped a puddle. Testifying in corroboration was a trusty from the Bureau County jail who stated that he had been responsible for laundering the clothes defendant wore when arrested and that there was no mud on those clothes.

The primary issue on appeal is whether the trial court erred in admitting evidence of the incriminating statements made by Kord to the trooper and the fact of defendant's silence following those statements. Defendant initially contends that the confession of a codefendant (Kord) inculpating defendant was not admissible in the absence of the codefendant testifying since defendant was denied his right to confront and cross-examine his accuser. Defendant relies upon *People v. Pettis* (1982), 104 Ill. App. 3d 275, a case that involved a codefendant's statement made after both defendants were in custody. Nothing in that opinion indicates that the disputed statement was made in the presence of the defendant Pettis or that Pettis had remained silent after hearing the accusation against him. *People v. Pettis* is not applicable here.

■ The State urges us to apply the rule that a defendant's silence following an accusative statement may be considered as a tacit admission of the charge contained in the accusation and that both the statement of accusation and defendant's silence are admissible as an exception to the hearsay rule. This rule was clearly stated in *People v. Miller* (1984), 128 Ill. App. 3d 574, 583, 470 N.E.2d 1222, as follows:

> "It is well established that when a statement, incriminating in character, is made in the presence and hearing of the accused, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of defendant's failure to deny it are admissible as evidence of his acquiescence in its truth. (*People v. Morgan* (1976), 44 Ill. App.

3d 459, 462, 358 N.E.2d 280.) In order to qualify as an implied admission or an admission by silence, it is necessary that the circumstances be such ' "that the accused has heard the statement implicating him and has voluntarily refused to challenge the statement." ' (*People v. McCain* (1963), 29 Ill. 2d 132, 135, 193 N.E.2d 784, quoting *People v. Nitti* (1924), 312 Ill. 73, 91, 143 N.E. 448; see also *People v. Simpson* (1976), 38 Ill. App. 3d 318, 321-22, 349 N.E.2d 441.)"

Relying upon *People v. Miller* and the authorities cited therein, we conclude that the admission of Kord's statements and defendant's silences was not a violation of defendant's right to confrontation and cross-examination if the evidence in question meets the requirements of the tacit admission rule. This brings us to defendant's second contention, which is that the requirements of the tacit admission rule were not satisfied here.

The necessary elements for admissibility are (1) that defendant heard the accusative statement, (2) that defendant had an opportunity to reply and remained silent, and (3) that the accusation was such that the natural reaction of an innocent person would be to deny it. (*People v. McCain* (1963), 29 Ill. 2d 132, 193 N.E.2d 784.) Defendant argues that he was not silent in the face of Kord's incriminating statements but rather that he denied participation in Kord's illegal activities when he told the trooper, "You did not see the bag in my hand," while walking back toward the parking area.

■ Clearly an issue of fact was presented by the evidence concerning defendant's response to Kord's statements. Trooper Weyforth indicated that defendant remained silent immediately after both statements by Kord which implicated defendant in the collection of marijuana from the cornfield. Not until a minute or two after the men began to walk to the parking area did defendant speak. Defendant, on the other hand, said he first denied involvement immediately after Kord's statement and that he again denied participation five or six seconds later. The trial court could reasonably have found the trooper's version to be true, and then decided that an innocent person would be expected to speak at once to deny the accusation of illegal activity, particularly a person who was concerned about doing something wrong when he had a prior criminal record, as defendant indicated he was.

No cases relating to the timeliness of the denial have been found. We hold that a denial must be made sufficiently close to the time of the accusation to relate directly to it and be a reasonable response to the accusation. The immediacy and duration of the silence are factors

to be considered in determining the admissibility of such evidence. Under the circumstances present here, we conclude that defendant's initial silence amounted to a failure to voice a timely denial of involvement in an activity he now admits he knew was criminal.

Not only was defendant's belated response to Kord's accusation not timely, but the trial court also ruled that defendant's subsequent assertion was not a denial of culpability. According to the trooper, defendant only said that the trooper did not *see* him with the bag; he did not deny touching the bag or picking marijuana. It was not error to conclude that an innocent person would have denied involvement in the pot-gathering activity rather than merely challenging what the trooper saw. ·

Defendant further argues that the State failed to prove that he heard the accusations, that he had an opportunity to deny them, and that Kord's statements would have been denied by an innocent person. We disagree and hold that the testimony of Trooper Weyforth was sufficient to support the trial court's ruling that the evidence was admissible.

■ Defendant also contends that this case comes within an exception to the tacit admission rule which was noted in *People v. Bennett* (1954), 3 Ill. 2d 357, 361, 121 N.E.2d 595, 598, where the court held that the silence of an accused is not admissible in evidence where charges are made against him in circumstances such that "he is restrained from speaking either by fear, doubt of his rights, instructions given him by his attorney or a reasonable belief that it would be better or safer for him if he kept silent." *People v. Bennett* involved a defendant in custody who remained silent when questioned about his commission of a crime. The case predates the landmark decision of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, which, *inter alia*, requires law enforcement officers to warn defendants of their constitutional right to remain silent. In our view, *Miranda v. Arizona* changed the rules concerning prosecutorial comment on defendant's silence when accused of a crime, thus negating the statement in *People v. Bennet.*

■ Defendant also argues that he was effectively "in custody" at the time Kord made his statements incriminating defendant and, therefore, that the State is barred from referring to defendant's silence. (See *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) A review of the testimony of Trooper Weyforth and defendant concerning the situation at the time Kord made his two statements incriminating defendant indicates that a custodial interrogation was not taking place. The conversations in the construction area were a general

investigatory questioning to determine whether a crime had occurred, and at the time Kord admitted that the marijuana in the bag "was all we could find," the three suspects were standing in an open space some distance from the police officer. A reasonable person innocent of any crime would not perceive himself to be in custody under those circumstances. (See *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870; *People v. Romano* (1985), 139 Ill. App. 3d 999, 487 N.E.2d 785.) Furthermore, defendant himself testified that he believed they were being arrested when the trooper told them to walk back to the parking area. This occurred after Kord's statements and defendant's silences.

■ The State claims that defendant waived his right to the exclusion of references to custodial silence on the ground that no objections were made at trial. The record on appeal, however, discloses that defendant objected several times during trial to the admissibility of Kord's statement and defendant's silence and also objected to improper comment on his right to remain silent. This issue was also raised in defendant's post-trial motion. We hold that it was not waived.

Finally, defendant contends that he was not proved guilty beyond a reasonable doubt since there was no evidence to corroborate Kord's incriminating statements, there was no mud on defendant's clothing, and the scientific evidence was not reliable due to the State's failure to prove the chain of possession. Considering the evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could find all the elements of the crime proved beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ In this case, the circumstantial evidence alone was sufficient to support defendant's conviction. The report of proceedings discloses that one of the maintenance men saw defendant picking something along the fence row and putting it into something. The trooper saw mud on defendant's pants and found a bag of marijuana which Kord stated the two men had picked. Also, defendant stipulated to the chain of possession of the marijuana. This evidence corroborated Kord's admissions and, taken altogether, was sufficient to sustain the judgment of conviction.

We affirm the judgment of the trial court.

Affirmed.

McCUSKEY and HAASE, JJ., concur.