THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY D. POWELL, Defendant-Appellant.

Fourth District    No. 4—98—0328

Opinion filed December 2, 1998.

Robert I. Auler, of Auler Law Offices, P.C., of Urbana, for appellant.

Roger Simpson, State's Attorney, of Monticello (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1998, a jury convicted defendant, Terry D. Powell, of two counts of domestic battery (720 ILCS 5/12—3.2(a)(2) (West 1996)), and the trial court later sentenced him to probation subject to various conditions, including that he serve 120 days in jail. Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the court made certain evidentiary rulings that deprived him of a fair trial, including admitting testimony that defendant refused to answer questions he was asked by a deputy sheriff; and (3) the court abused its discretion by imposing an improper condition of probation. We agree that the court erred by admitting evidence of defendant's refusal to answer the deputy, and accordingly we reverse and remand for a new trial.

## I. BACKGROUND

Because we are reversing and remanding for a new trial, we discuss the evidence presented at defendant's trial only to the extent necessary to put the trial court's evidentiary ruling at issue in context.

The events at issue occurred on the evening of November 11, 1997, at defendant's residence, where he lived with his wife, Sandra, and their 13-year-old daughter, Vanessa. As defendant and Sandra prepared dinner, they started to argue. Their argument became heated, and defendant either intentionally or inadvertently spit on Sandra and then grabbed her by the neck and choked her. Vanessa, who had been using a cordless telephone in another room, heard the argument and came into the kitchen, still carrying the telephone. Vanessa become upset upon seeing defendant choke Sandra, and she started hitting defendant with the telephone. Defendant then threw or pushed Vanessa down, and she became more upset and ran out of the house. When defendant realized Vanessa had fled the residence with the cordless phone, he pulled the phone stand off the wall.

Vanessa ran to a nearby residence occupied by her older sister and her sister's roommate, Roberta Morris. When Vanessa arrived, Morris noticed that Vanessa was shaking and had tears on her cheeks, so Morris comforted her. Vanessa also had no shoes on and her socks were muddy and wet.

Morris called the police, and two deputy sheriffs arrived a few minutes later at defendant's residence. Meanwhile, Sandra had left that residence to drive around looking for Vanessa. Sandra searched unsuccessfully for Vanessa for 15 to 20 minutes and then returned to the residence. The deputies were already there and had been for several minutes. They had been knocking on the door, but defendant, who was inside, had not responded.

Sandra let the deputies in the residence, and they asked to speak to defendant. They went to defendant's bedroom, where he was in bed. Sandra originally told the officers that she and defendant had been arguing but nothing had happened. When the officers first spoke with defendant in the bedroom, they asked him what had happened, and he also responded that nothing had happened.

After speaking with defendant, one of the deputies left to speak with Vanessa, who was still at Morgan's residence. Vanessa provided a different version of events, which the deputy related to Sandra upon his return to her residence. Sandra then admitted that defendant had spit on her and choked her.

Deputy Todd McCabe's testimony provided much of the previous information. At this point in his direct examination, the prosecutor questioned McCabe about what happened next, and he testified as follows:

"Q. After you spoke with Sandra the second time, Deputy McCabe, you then went back and spoke with the defendant ***?

A. Yes I did.

Q. Did you ask him if Sandra hit him?

A. Yes I did.

Q. And what was his response?

A. He said she did not.

Q. Did you ask him if he grabbed his wife and daughter around the neck?

A. Yes I asked him that.

Q. And that was your next question?

A. Yes.

Q. What was his response?

A. He wouldn't answer."

Immediately prior to the above testimony, defense counsel objected when the prosecutor asked McCabe if he spoke with defendant after

speaking for a second time with Sandra. Out of the presence of the jury, defense counsel argued that eliciting testimony from McCabe that defendant refused to answer his questions was tantamount to telling the jury that defendant exercised his right to remain silent and was thus inappropriate. The State responded that because McCabe's questioning of defendant did not constitute a custodial interrogation, but was merely a preliminary examination at the scene, constitutional ramifications did not arise. The trial court overruled defense counsel's objection and stated that it agreed with the State's analysis.

On this evidence, the jury convicted defendant of two counts of domestic battery, and this appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred by permitting the State to question McCabe about defendant's refusal to answer McCabe's questions. Defendant points out that when this occurred, defendant had not yet testified; therefore, nothing about defendant's refusal to answer questions was then admissible to discredit any exculpatory testimony defendant had given. Defendant contends that McCabe's testimony about defendant's refusal to answer McCabe's questions had no probative content and seriously prejudiced defendant. We agree.

### A. The Tacit Admission Rule

█ In civil cases, the law has long recognized that a party's silence when confronted with a statement made in his presence under circumstances that would normally call for a denial constitutes an admission. See *Bailey v. Bensely*, 87 Ill. 556 (1877); *Dill v. Widman*, 413 Ill. 448, 454, 109 N.E.2d 765, 769 (1952); *Breslin v. Bates*, 14 Ill. App. 3d 941, 947, 303 N.E.2d 807, 812 (1973). This doctrine also applies under certain circumstances in criminal cases, but its application there has been much more restricted. In *People v. Aughinbaugh*, 36 Ill. 2d 320, 322-23, 223 N.E.2d 117, 119 (1967), the supreme court addressed this doctrine—calling it the "tacit admission rule"—as follows:

> "While the tacit admission rule obtains in this State, and the silence of a defendant in the face of an accusation of guilt may be shown at his trial as evidence of guilt, such evidence should be received with caution and only when the conditions upon which it becomes admissible are clearly shown to exist."

Over 60 years ago, the Supreme Court of Illinois addressed the issue of a defendant's silence in the face of accusations in *People v. Rothe*, 358 Ill. 52, 57, 192 N.E. 777, 779 (1934), and the court wrote the following:

> "The court permitted the prosecution to prove by an officer that

the defendants refused to make a statement at the police station. In this refusal they were within their rights, and the fact that they refused to make a statement had no tendency to either prove or disprove the charge against them. The admission of this evidence was prejudicial, and since it was neither material nor relevant to the issue being tried, it should have been excluded."

See also *People v. Wright*, 32 Ill. App. 3d 736, 741, 336 N.E.2d 18, 22 (1975), where the court cited *Rothe* and wrote the following:

"Long before the United States Supreme Court held, in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, that defendants have a right to remain silent in the face of police interrogation, the Illinois Supreme Court held it was error for the State to offer testimony as to defendants' refusal to make a statement."

In addition, in *People v. Savory*, 105 Ill. App. 3d 1023, 1032, 435 N.E.2d 226, 232-33 (1982), the court wrote that it did not need to address any constitutional questions raised by the State's use of a defendant's tacit admission in a criminal case because, under the circumstances of that case, "[t]he use by the State of defendant's statement that he did not want to talk to the police from which to draw a direct inference of guilt was improper." Despite this impropriety, the court affirmed the defendant's conviction on the ground that the evidence of his guilt was so strong that the error was harmless beyond a reasonable doubt. *Savory*, 105 Ill. App. 3d at 1032, 435 N.E.2d at 233.

The defendant in *Savory* exhausted his state appeals and then sought federal *habeas* relief. Ultimately, his case reached the Seventh Circuit Court of Appeals, which then had occasion to address the admissibility of his tacit admission. That court upheld the federal district court's denial of *habeas* relief by agreeing with the state courts that the errors committed at defendant's trial were harmless beyond a reasonable doubt. *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1020 (7th Cir. 1987). In reaching its decision, the seventh circuit wrote the following:

"Because appellant did not take the stand, and the [S]tate's purpose in referring to appellant's silence was to suggest that he was guilty (rather than to impeach his testimony), [this case] *** involves the application of *Griffin v. California*, 380 U.S. 609, [14 L. Ed. 2d 106, 85 S. Ct. 1229] (1965). That case held that neither the prosecutor nor the court may invite the jury to draw an inference of guilt from an accused's failure to take the stand. ***

While it is true that *Griffin* involved governmental use of the defendant's silence at trial, rather than when initially questioned by police, *** we do not believe these factors make a difference. The right to remain silent, unlike the right to counsel, attaches

before the institution of formal adversary proceedings. \*\*\* In this respect, we believe *Griffin* remains unimpaired and applies equally to a defendant's silence before trial, and indeed, even before arrest.

Thus, [this] case is distinguishable from the cases the [S]tate cites such as *Fletcher v. Weir*, 455 U.S. 603, [71 L. Ed. 2d 490, 102 S. Ct. 1309] (1982) and *Jenkins v. Anderson*, 447 U.S. 231, [65 L. Ed. 2d 86, 100 S. Ct. 2124] (1980), where the government used the defendant's silence to impeach his trial testimony. After all, there is no constitutional right to commit perjury, which impeachment is designed to detect. \*\*\* The cases which have allowed impeachment by silence rely on the fact that the defendant opens himself to impeachment by taking the stand. See *Fletcher*, 455 U.S. at 605-06, 102 S. Ct. at 1311-12; *Jenkins*, 447 U.S. at 235-36 & n.2, 100 S. Ct. at 2127-28 & n.2. There is, on the other hand, a constitutional right to say nothing at all about the allegations. While the presence of *Miranda* warnings might provide an additional reason for disallowing use of the defendant's silence as evidence of guilt, they are not a necessary condition to such a prohibition.

In sum, we believe that the [S]tate's suggestion that use of a defendant's silence to impeach his trial testimony presents a constitutional issue, but use of his silence to imply guilt does not, is nothing short of incredible, given the language of our constitution and the interpretation it has been consistently given." *Savory*, 832 F.2d at 1017-18.

Although the seventh circuit makes a strong case for the unconstitutionality of applying the tacit admission rule to a criminal defendant under police questioning, we respectfully decline to go that far. We think it possible—even if highly unlikely—that a scenario could arise in which a defendant's tacit admission might be probative.

■ Professor Michael H. Graham has discussed the circumstances under which the tacit admission rule applies in criminal cases, as follows:

"Evidence must be introduced sufficient to support a finding \*\*\* that in light of the totality of the circumstances, a statement was made that the defendant heard, understood, had an opportunity to deny, contradict, or object, and in which the defendant by his silence acquiesced. In addition the court alone must determine that it is more probably true than not true \*\*\* that the statement was such that under the circumstances it would naturally be expected that an innocent person would deny the truth of the statement if he believed it to be untrue. [Citations.] The burden of proof belongs to the prosecution." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.7, at 679 (6th ed. 1994) (hereinafter Graham's Handbook); Graham's Handbook § 802.7, at 203 (Supp. 1998).

We believe Professor Graham provides appropriate guidance regarding the tacit admission rule, and his analysis should be applied to future attempts by the State to introduce a defendant's tacit admission.

Professor Graham also shared many of the concerns expressed by the seventh circuit in *Savory*, when he wrote the following:

"In addition to the inherently ambiguous nature of the inference itself, *United States v. Hale*, 422 U.S. 171 (1975), other considerations raise doubts as to the propriety of applying the [tacit admission] rule in criminal cases, especially when an accusation to the defendant is made under the auspices of law enforcement personnel. Silence may be motivated by prior experience or the advice of counsel. *** Moreover, the accused would effectively be compelled to speak, either at the time or upon the trial, by way of explaining her reasons for remaining silent, which to say the least, crowds her privilege against self-incrimination uncomfortably. *** Thus, while pre-arrest silence not induced by government action may be employed to *impeach* the criminal defendant, *Jenkins v. Anderson*, 447 U.S. 231 (1980); *People v. Manley*, 222 Ill. App. 3d 896, 165 Ill. Dec. 298, 584 N.E.2d 477 (1991), and even post-arrest silence occurring prior to the giving of *Miranda* warnings, *Miranda v. Arizona*, 384 U.S. 436 (1966), may be employed to *impeach* the criminal defendant, *Fletcher v. Weir*, 455 U.S. 603 (1982), silence in the face of a pre-arrest statement should be received as an admission only with extreme caution." (Emphasis in original.) Graham's Handbook § 802.7, at 679-80.

■ The concerns the supreme court expressed in *Aughinbaugh* are fully justified by the circumstances in the present case. Defendant's silence here was probative of nothing. He was asked by law enforcement officers if he had spit on and choked his wife, and his silence may have been motivated by nothing more than his prior experience or the advice of counsel.

The trial court here did not determine (using Professor Graham's analysis) that it was more probably true than not true that the circumstances under which accusatory questions were asked defendant would naturally be expected to induce an innocent person to deny the truth of the statement if he believed it to be untrue. Accordingly, we hold that the court erred by admitting defendant's silence in response to McCabe's question.

## B. Reversible Error

The State contends that even if the evidence of defendant's silence was improperly admitted, its case was so strong that the error was harmless. We disagree. Upon reviewing the admissible evidence, we conclude that the evidence was sufficient to support a finding of guilt

beyond a reasonable doubt. Thus, defendant faces no risk of double jeopardy and may be retried. See *People v. Cruz*, 162 Ill. 2d 314, 374, 643 N.E.2d 636, 664 (1994). However, the State's evidence was far from overwhelming, and we view the error in admitting testimony regarding defendant's silence as seriously affecting his right to a fair trial.

The State also argues that defendant has waived this issue by not filing a pretrial motion to suppress evidence. However, we agree with defendant's rejoinder that defendant could hardly be expected to file such a motion when, in fact, there was no statement of his to suppress. After all, the matter at issue in this case is defendant's *silence*.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

KNECHT, P.J., and McCULLOUGH, J., concur.