THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TESHOME CAMPBELL, Defendant-Appellant.

Fourth District    No. 4—99—0099

Argued October 10, 2001.—Opinion filed July 26, 2002.—Rehearing denied August 23, 2002.

Daniel D. Yuhas and Jacqueline L. Bullard (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

On October 15, 1998, a jury convicted defendant, Teshome Campbell, of first degree murder (720 ILCS 5/9—1(a)(2) (West 1996)) for his involvement in the beating death of James Shepherd. On November 24, 1998, the trial court denied defendant's posttrial motion and sentenced him to 55 years in prison. On January 7, 1999, the trial court denied defendant's motion to reconsider his sentence. Defendant appeals his conviction. We affirm.

## I. BACKGROUND

During the early morning hours of December 25, 1997, James Shepherd, the murder victim, picked up Rita Butler, a prostitute, and drove to the corner of Bellefontaine Street and Clock Streets in Champaign to buy "crack" cocaine. Butler purchased a $20 rock of crack cocaine from defendant. Defendant had sold her drugs on two or three previous occasions. She and the victim then drove to a different location to smoke the crack. Upon discovering the crack was fake, the victim drove back to Bellefontaine Street to get his money back from defendant. The victim exited his van and approached defendant, who was standing with a large group of people. Butler remained in the van, which was parked around the corner and facing away from the area where the victim approached defendant and the group of men on Bellefontaine Street.

Butler testified that the victim and defendant began to struggle. She did not see who threw the first punch. Five to nine people then joined in the fight. Unable to defend himself, the victim fell to the ground. The crowd continued to kick and punch the victim until the sound of approaching police sirens caused the crowd to disperse. The victim died about one month after the attack as a result of multiple blows to the head.

The following material, *i.e.*, the remainder of the facts, is nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23).

## II. ANALYSIS

Defendant appeals and asks this court to reverse his conviction on the basis of prosecutorial misconduct, ineffective assistance of counsel, the improper admission of hearsay testimony, and insufficient evidence to prove defendant guilty beyond a reasonable doubt. We address each issue in turn.

### A. Prosecutorial Misconduct

The material in this section and sections (A)(1) through (A)(4) is nonpublishable under Supreme Court Rule 23.

### 5. *Prearrest Silence*

Defendant contends his fifth amendment right to remain silent was violated when the prosecutor presented evidence and argument referring to defendant's exercise of that right when questioned by police prior to his arrest and prior to any warnings. Defendant agreed to talk to the officers and followed them to their unmarked squad car where the officers interviewed him. The officers asked defendant if he was present the night of the murder. He told them he was outside a house on Bellefontaine Street and witnessed the beating, but he was not involved or anywhere near the victim. The officers asked where he went after the beating, and defendant responded, "I think I left. I think I went and got some pussy, but I don't really remember." Officer Kelly testified he then asked defendant, "Well, who was it? Where did you go?" At this point, defendant replied, "Man, I ain't got nothing more to say to you," and exited the vehicle.

■ Even illegally obtained evidence may be used to *impeach* a defendant. Where a defendant does not merely deny the elements of the claim against him, but makes "sweeping claim[s]," such as that he had never dealt in or possessed any narcotics, defendant may be impeached with illegally obtained evidence. *Walder v. United States*, 347 U.S. 62, 65, 98 L. Ed. 503, 507, 74 S. Ct. 354, 356 (1954) (heroin illegally seized from his home two years earlier). Such impeachment may include a statement made by defendant which would be inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). *Harris v. New York*, 401 U.S. 222, 224, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643, 645 (1971). However, impeachment by defendant's postarrest silence after he had received *Miranda* warnings is impermissible. Such silence is "insolubly ambiguous" and using such silence would be fundamentally unfair given the fact that the warnings carry the implicit assurance that silence will carry no penalty.

*Doyle v. Ohio*, 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct. 2240, 2244-45 (1976).

■ In contrast, a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. *Anderson v. Charles*, 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180 (1980) (impeachment by prior inconsistent statements permitted); see also *Jenkins v. Anderson*, 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980) (where defendant claimed self-defense at trial, State allowed to impeach by defendant's prearrest silence in not reporting stabbing for two weeks). A defendant who chooses to answer police questions may be cross-examined regarding matters he did not disclose. "Following his arrest and *Miranda* warnings, defendant did not remain silent. He related an entire version of events, but denied his knowledge of the cocaine and the anticipated drug deal. Defendant also omitted significant details to which he later testified at trial." *People v. Frieberg*, 147 Ill. 2d 326, 356, 589 N.E.2d 508, 522 (1992) (State could properly cross-examine). *Frieberg* distinguished an earlier case: "[*People v.*] *Gagliani*[, 210 Ill. App. 3d 617, 569 N.E.2d 534 (1991),] did not concern a situation where a defendant gave authorities any version of events which later proved inconsistent; the defendant simply denied knowledge of the incident." *Frieberg*, 147 Ill. 2d at 356, 589 N.E.2d at 522.

*Frieberg* involved impeachment, but there is no reason a defendant's prior statements cannot come in substantively, on direct examination. Perhaps mere silence, either at trial or during the initial questioning by police, is not admissible on direct examination. *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017 (7th Cir. 1987) (initial questioning); *Griffin v. California*, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965) (silence at trial). This case, however, does not involve mere silence but a defendant who chose to speak to the police. Any statement by an accused person, unless excluded by the privilege against self-incrimination or other exclusionary rules, may be used against him as an admission, even if it is not inculpatory or against interest. *People v. Aguilar*, 265 Ill. App. 3d 105, 110, 637 N.E.2d 1221, 1224 (1994).

Defendant chose to speak to the police. He made an important assertion in his own defense, that he did not flee the scene in codefendant Bobby Joe Douglas's car, that "I think I went and got some pussy, but I don't really remember." When the police attempted to verify the details of defendant's alibi, defendant refused to provide the name of the woman. The State was entitled to show that defendant either could not or would not furnish the details of his alibi, thereby permitting the inference that his alibi was fictitious. Omitting facts within a

statement does not involve the right to remain silent. *People v. Mischke*, 278 Ill. App. 3d 252, 265, 662 N.E.2d 442, 451 (1995). A defendant who spoke to the police about his thriving narcotics trade could not complain when the officer testified that defendant said nothing about the murder at the time of his arrest except, "it will all come out in court." *People v. Garza*, 276 Ill. App. 3d 659, 669-70, 658 N.E.2d 1355, 1362 (1995). Here, the prosecutor did not comment on defendant's silence but on the inconsistent statements defendant made to police.

*Frieberg* and *Anderson* stand for the proposition that a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. It is no help to defendant that this case did not involve a custodial interrogation and did not rise to the level where a *Miranda* warning was required. Instead, that fact weighs in favor of the prosecution. Impeachment by postarrest silence not preceded by *Miranda* warnings has been allowed on the basis that the government has not induced silence by implicitly assuring the defendant that his silence would not be used against him. *Fletcher v. Weir*, 455 U.S. 603, 606-07, 71 L. Ed. 2d 490, 494, 102 S. Ct. 1309, 1312 (1982).

It has been held that a potential *Doyle* violation, in cases in which the evidence is closely balanced, should be treated as plain error for purposes of review. *Gagliani*, 210 Ill. App. 3d at 626, 569 N.E.2d at 540. This case does not involve a *Doyle* violation, but a situation where defendant chose to talk to police. It could be argued that defendant's statement, "Man, I ain't got nothing more to say to you," was not a refusal or inability to answer a specific question, but an invocation of his fifth amendment privilege. The trial court was deprived of the opportunity to address the issue or attempt to prevent any unfair prejudice by giving instructions or the like by defendant's failure to object.

■ Defendant argues that the prosecutor improperly used evidence of his invocation of his right to remain silent as evidence of guilt during the State's case in chief and during argument. During opening arguments, the prosecutor told jurors defendant "wasn't real cooperative" when police initially interviewed him. During closing arguments, the prosecutor said that the reason there was no physical evidence against defendant was because when the police interviewed defendant four days after the attack, defendant "stonewalled" them. The prosecutor further commented that defendant "threw up an attitude" when police questioned him and he "built a wall" between himself and the police. Again, these comments are properly viewed, not as a comment on defendant's silence, but as a comment on the statements defendant did make to the police.

## 6. *Prosecutor's Improper Remarks During Closing Argument*

■ Defendant's final six allegations of prosecutorial misconduct relate to closing argument. In analyzing whether a prosecutor's closing argument was improper, the law gives a prosecutor wide latitude in argument and he may comment on facts and legitimate inferences that may be drawn therefrom. *People v. Enis*, 163 Ill. 2d 367, 407, 645 N.E.2d 856, 874 (1994). Further, the prosecutor may respond to comments made by defense counsel, denounce the activities of the defendant, and highlight inconsistencies or weaknesses in the defendant's argument. *People v. Sutton*, 260 Ill. App. 3d 949, 960, 631 N.E.2d 1326, 1335 (1994). Finally, in reviewing allegations of prosecutorial misconduct, the arguments of both the prosecutor and the defense counsel must be examined in their entirety and the allegedly improper remarks must be placed in the proper context. *People v. Westbrook*, 262 Ill. App. 3d 836, 856, 635 N.E.2d 398, 411 (1992).

The material in sections (6)(a) and (6)(b) is nonpublishable under Supreme Court Rule 23.

### (c) Witness Fear

■ Defendant next contends the prosecutor improperly told the jury the witnesses were afraid to testify and implied the defendant was responsible for that fear. Specifically, defendant contends that during closing argument the prosecutor emphasized and contrasted the "alleged fears" of the witnesses with a menacing and threatening portrayal of defendant.

First of all, the "alleged fears" commented upon were based on testimony from the witnesses that they were, in fact, afraid. Rita Butler testified she was "scared" when Officer Swan questioned her about two weeks after the incident. Damion Johnson, a witness to the beating originally charged with the murder but who was testifying in exchange for having the charges dropped, testified he did not voluntarily tell police what he knew about the incident because he did not want his cousins and friends (some of the codefendants were also his cousins) to get in trouble, and he was afraid of what might happen if he talked to police. When asked what he was afraid might happen, Johnson said, "[s]omebody coming back and blow us up, too." A few lines later, Johnson clarified he was afraid "['t]hey['] might try to do something to me," and "try to hurt me." Looking at the prosecutor's closing argument in its entirety and putting comments in their proper context, it becomes clear that the prosecutor's purpose in commenting on the evidence of the witnesses' fear to come forward was to explain why it was not inconsistent for them to have a different story now than they did initially. There was no impropriety here.

Finally, during Johnson's testimony, the prosecutor made this reference to Johnson's fear and reluctance to testify: "listen carefully, 'cause [Damion Johnson's] got his chin down on his chest because his cousin's sitting right there staring daggers at him." The prosecutor did commit error when he made the comment that defendant was "staring daggers" at Johnson while Johnson was testifying. *People v. Crabtree*, 162 Ill. App. 3d 632, 637, 515 N.E.2d 1323, 1326 (1987) (error for prosecutor to comment on defendant's nontestifying demeanor). We find this single, isolated comment to be harmless, however, because the jury was instructed that closing arguments made by counsel were not evidence and that any argument or statement made by counsel not based on the evidence should be disregarded. This instruction has been held to cure any prejudice to the defendant because of the prosecutor's improper remarks. *People v. Labosette*, 236 Ill. App. 3d 846, 857, 602 N.E.2d 966, 974 (1992).

The material in sections (6)(d), (6)(e), and (6)(f) is nonpublishable under Supreme Court Rule 23.

## B. Ineffective Assistance of Counsel

■ Defendant contends his sixth amendment right to the effective assistance of counsel was violated when defense counsel failed to mount any defense whatsoever, despite a wealth of evidence at his disposal. To establish ineffective assistance of counsel, a defendant must show the conduct of defense counsel fell below an objective standard of reasonableness and, but for counsel's deficient performance, a reasonable probability exists the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984). Defense counsel's actions must be reviewed in the context of the entire trial, and the defendant must overcome the presumption the complained-of actions could be considered trial strategy under the circumstances. *Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66. "[N]either mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates the trial lawyer was incompetent." *People v. Vera*, 277 Ill. App. 3d 130, 138, 660 N.E.2d 9, 16 (1995). Finally, the failure to satisfy either the deficiency or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Specifically, defendant contends his counsel was ineffective because he (1) failed to impeach two of the State's occurrence witnesses; (2) failed to call two disinterested eyewitnesses who could not identify defendant as a participant, but who could identify the State's leading

witnesses, Steven Peete and Johnson, as participants; (3) tendered an improperly worded accomplice witness instruction; (4) failed to attack the reliability of Butler's initial identification of defendant from a photo array; (5) failed to tender a jury instruction limiting the consideration of defendant's alleged prior drug sales to the issue of identification; and (6) failed to object to nearly all instances of prosecutorial misconduct. We address each allegation in turn.

### 1. *Failure To Impeach Two of the State's Witnesses*

■ Defendant first contends defense counsel failed to impeach Johnson and Peete, both witnesses to the beating originally charged with the murder but who were testifying in exchange for having the charges dropped, with their complete criminal records and the specific details of their agreements with the State. On direct, the State revealed Johnson had a weapons conviction and a pending burglary charge and the fact that "back in high school," Johnson was "adjudicated as a delinquent because [h]e got into a fight." Defendant argues defense counsel was ineffective because he did not attempt to inform the jury of the remainder of Johnson's criminal record, which was extensive, or the fact the high school "fight" was actually a felony aggravated battery. Further, defense counsel failed to point out Johnson's petition to revoke probation was pending at the time of his testimony, and his sentence of conditional discharge was pending when he entered into the agreement with the State. Defendant argues Johnson had a strong interest in cooperating with the State because he could have faced up to three years in prison on the weapons conviction and he faced up to a year on the pending revocation-of-probation petition. Finally, defendant argues defense counsel should have elicited testimony on Johnson's theft adjudication because it was an offense directly involving dishonesty. See *People v. Spates*, 77 Ill. 2d 193, 204, 395 N.E.2d 563, 568-69 (1979) (reasonable relation between theft and testimonial deceit).

In addition to the failure to inform the jury of the totality of Johnson's criminal background, defendant argues defense counsel failed to elicit testimony concerning the details of Johnson's agreement with the State. Specifically, defendant argues Johnson's credibility would have been seriously undermined if the jury had been aware the State could reinstate murder charges against Johnson if he failed to testify to the "truth," as spelled out in the agreement. As to Steven Peete, defendant argues defense counsel failed to impeach him with a prior juvenile adjudication for felony mob action and failed to inform the jury of the details of Peete's agreement with the State.

Defendant must show that not impeaching Johnson and Peete in

the way he claims his counsel should have done was both objectively unreasonable and that, but for this error, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. The decision whether to impeach a witness is generally considered a matter of trial strategy, and failure to do so is therefore not objectively unreasonable. See *People v. Ward*, 187 Ill. 2d 249, 261-62, 718 N.E.2d 117, 127 (1999) (decisions of what evidence to present are matters of trial strategy and therefore normally immune from claims of ineffective assistance). Further, here the prosecutor had already elicited testimony from Johnson that he had prior convictions and that Johnson and Peete were only testifying because the State was going to drop the murder charges against them. The jury was fully aware that Johnson and Peete were not the most reliable witnesses and that they had an incentive to incriminate defendant. These witnesses were impeached. Defendant's entire argument is basically his belief that the witnesses were not impeached enough.

To support his claim, defendant asks us to compare his trial to the trial of codefendant Douglas, who was acquitted. Douglas's counsel did bring out the details about Johnson's criminal record and his agreement with the State in the way defendant now argues his counsel should have done. Therefore, defendant argues, if his counsel had done what Douglas's counsel had done, then there is a reasonable probability that defendant would have been acquitted too.

Defendant argues that we are allowed to compare his trial with Douglas's trial, citing *People v. Edwards*, 195 Ill. 2d 142, 165, 745 N.E.2d 1212, 1225 (2001), a recent Illinois Supreme Court case which compared the results of the trials of codefendants when one defendant claimed ineffective assistance of counsel on appeal. The defendant in *Edwards* was charged with aggravated kidnapping and murder for burying a man alive in a wooden box. *Edwards*, 195 Ill. 2d at 151, 745 N.E.2d at 1217. The defendant in *Edwards* argued that his counsel was ineffective for failing to seek to limit the amount of time that the wooden box was present in the courtroom and pointed out that a motion to that effect was made and granted in the trial of his codefendant. The court in *Edwards* found that failing to make the motion was not ineffective assistance of counsel because, even if the motion had been granted, the defendant could not have excluded the wooden box entirely. *Edwards*, 195 Ill. 2d at 165, 745 N.E.2d at 1225. The *Edwards* court further noted that because Edwards' codefendant was also convicted, "it [did] not appear that the presence of the box was an influential consideration in the jury's guilty verdicts here." *Edwards*, 195 Ill. 2d at 165, 745 N.E.2d at 1225.

*Edwards* appears to stand for the proposition that a reviewing court can use a codefendant's conviction as evidence that defendant's counsel's strategy was not ineffective assistance because the results would have been the same regardless. Defendant argues the converse of *Edwards*: that a codefendant's acquittal can be used as evidence that defendant's counsel's strategy was ineffective assistance because the results would have been different.

We decline to give *Edwards* the interpretation argued by defendant. We do not know what happened in Douglas's trial or why the jury acquitted him. The jury may have simply believed Douglas or believed he was less responsible than others who instigated the beating. Douglas's counsel's handling of Johnson may have had nothing to do with the acquittal. It is entirely too speculative to say that defendant would likely have been acquitted too if his counsel had used the same strategy as Douglas's counsel. Douglas's acquittal is not proof that defendant's counsel's strategy was either objectively unreasonable or that there is a reasonable probability that the result would have been different. That another strategy may have been better, or that another lawyer would have apparently handled the case differently, is not proof defendant's trial counsel was incompetent. *Vera*, 277 Ill. App. 3d at 138, 660 N.E.2d at 16.

## 2. *Failure To Call Two Disinterested Witnesses*

■ Defendant further argues that defense counsel's assistance was ineffective because he failed to call two disinterested eyewitnesses. Again, defense counsel's decision whether to call a witness is generally a matter of trial strategy and immune from claims of ineffective assistance. *People v. Enis*, 194 Ill. 2d 361, 378, 743 N.E.2d 1, 12 (2000). However, the failure to subpoena witnesses known to defense counsel who could contradict the State's theory of the case or provide exonerating testimony constitutes ineffective assistance. *People v. Butcher*, 240 Ill. App. 3d 507, 510, 608 N.E.2d 496, 498 (1992).

Defendant contends defense counsel's failure to call Leroy Hunter and Toni Leonard amounted to ineffective assistance because neither of these witnesses could identify defendant as a participant in the beating while they could identify both Peete and Johnson as participants. Defendant also argues Toni Leonard's testimony would have contradicted and weakened Rita Butler's testimony and Leonard would have identified Johnson as a participant in the beating. At codefendant Douglas's trial, Leonard testified she witnessed the altercation in its entirety as she walked home that evening. She stated she saw Lynntez Holt and Jeff Dillon initiate the argument with Shepherd, which contradicts Butler's testimony that defendant started the fight.

Further, Leonard, who had been a neighbor of Johnson's, identified him as a participant in the beating. Leonard's testimony at codefendant Douglas's trial was consistent with statements she gave to police, and these statements were tendered to defense counsel during discovery here.

We find that none of the testimony which defendant claims Hunter and Leonard would have given would have exonerated defendant. All these witnesses could do is further implicate Johnson and Peete as involved in the murder, a fact of which the jury was already aware because it knew Johnson and Peete had been charged with the murder. Implicating Johnson and Peete would not exonerate defendant. Also, testimony that defendant did not start the beating would not contradict the State's theory that defendant participated in the beating.

The State argues that the failure to call witnesses who could only further impeach the State's already disreputable witnesses cannot be ineffective assistance of counsel because it was a matter of trial strategy. As the State correctly points out, it was defendant's counsel's strategy during trial to argue that it was too dark on the street that night to make any specific identifications. There was evidence that the paramedics who arrived at the scene could not see the victim's face, even when right next to him, because it was too dark. Therefore, it would have been entirely contrary to defendant's counsel's strategy to call witnesses who claimed to have made specific identifications.

Essentially, defendant's entire argument is again his belief that his counsel's strategy should have been to do more to impeach the State's witnesses because that was a better strategy. The jury was aware of the problems with the State's witnesses. The record shows that all of the witnesses to the beating who were out on the street at 2 a.m. on Christmas morning, including those defendant argues should have been called, had problems. Defendant's counsel chose to argue it was too dark that night to make identifications, for which there was some evidence, rather than mount a defense based upon the conflicting testimony of unreliable witnesses. Whether or not failing to use impeachable witnesses to further impeach the State's already impeached witnesses was a mistake, it was still strategy. "[N]either mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates the trial lawyer was incompetent." *Vera*, 277 Ill. App. 3d at 138, 660 N.E.2d at 16.

The material in sections (B)(3) through (B)(6) is nonpublishable under Supreme Court Rule 23.

## C. Admission of Hearsay Evidence

Defendant next contends the trial court erred when it permitted the introduction of Heather Vinson's hearsay testimony regarding the conversation she overheard between codefendant Douglas and an unidentified man, where she could not attribute the statements to a particular speaker and where the testimony was not admissible as either an express or tacit admission.

■ Hearsay is defined as testimony regarding an out-of-court statement offered for the truth of the matter asserted. *People v. Cloutier*, 178 Ill. 2d 141, 154, 687 N.E.2d 930, 936 (1997). Hearsay is generally inadmissible unless it falls under an exception to the rule excluding it. *Cloutier*, 178 Ill. 2d at 154, 687 N.E.2d at 936. One exception to the hearsay rule permits the introduction of otherwise inadmissible hearsay if it constitutes an admission by a defendant, either express or tacit. See *People v. Goswami*, 237 Ill. App. 3d 532, 535-36, 604 N.E.2d 1020, 1023 (1992).

Vinson testified Douglas called her around 3 a.m. the night of the beating and asked her to pick him up at his house. When she arrived at his house, Douglas got into the front seat and a man she did not recognize got into the backseat. The following exchange between the prosecutor and Vinson then occurred over defense counsel's objection:

"Q. What did they say as they were talking back and forth had happened before you *** went to pick them up?

A. They beat some guy bloody.

Q. When they saw all the police cars there and the lights on the police cars, what did they say about the man?

A. That the guy must be dead.

Q. Do you remember them talking about the man who had been beaten and his comings and goings?

A. Oh, something was said about he—'I don't know why he came back' or 'I can't believe he came back' or something to that effect."

Vinson heard both men speak but did not recall "who said exactly what words." On cross-examination, defense counsel asked Vinson whether Douglas used the word "I" or "they" in describing the beating, and she answered, "I can't remember *** I think he said 'they.' " Vinson also could not recall what words the unidentified man spoke during the conversation. Vinson testified after they dropped off the unidentified man at codefendant Theodis White's house, she and Douglas went to his house. She then heard Douglas make a phone call and ask if "Theo was home."

The trial court explained its reasoning when it overruled defendant's objection to the admission of the hearsay testimony:

"I understand the State's theory to be and the evidence, at least

for purposes of analyzing this objection, to circumstantially permit the possible conclusion that the [d]efendant was the person other than Bobby Joe Douglas in the vehicle with Ms. Vinson, and it is my view that the statements elicited by the State were admissible either as a statement by the [d]efendant or adopted by the [d]efendant's silence made by Bobby Joe Douglas."

■ According to this reasoning, the trial court allowed Vinson's hearsay as either an express or tacit admission. A tacit admission may be admissible as an exception to the hearsay rule if sufficient evidence supports a finding that, in light of the totality of the circumstances, a defendant remained silent when faced with an incriminating statement, which, if untrue, would normally call for a denial. *People v. Powell*, 301 Ill. App. 3d 272, 277, 703 N.E.2d 934, 937 (1998).

■ There was evidence from Johnson, Vinson, and Cleo White that defendant was the other person in the car with Douglas when the incriminating statements were made. That evidence did not have to be conclusive for it to be admitted. A particular item of evidence does not have to be proved beyond a reasonable doubt to be admitted. *People v. Davis*, 248 Ill. App. 3d 886, 893, 617 N.E.2d 1381, 1386 (1993). Evidence is relevant if it has any tendency to prove a proposition in issue. *Davis*, 248 Ill. App. 3d at 893, 617 N.E.2d at 1386. The jury was entitled to consider the statements made in the Vinson car and whether they were expressly or tacitly made by defendant.

### D. Sufficiency of the Evidence

The material in section (D) is nonpublishable under Supreme Court Rule 23.

## III. CONCLUSION

We affirm defendant's conviction.

Affirmed.

MYERSCOUGH, J., concurs.

JUSTICE KNECHT, dissenting:

I respectfully dissent.

Defendant's conviction should be reversed because he did not receive effective assistance of counsel and damaging hearsay testimony was improperly admitted. Defendant contends his counsel was ineffective because he failed to (1) impeach two of the State's occurrence witnesses and (2) call two disinterested eyewitnesses who could not identify defendant as a participant, but who could identify the State's leading witnesses, Peete and Johnson, as participants.

Defendant must show the conduct of defense counsel fell below an objective standard of reasonableness and, but for counsel's deficient performance, a reasonable probability exists the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. I conclude defendant has satisfied both the deficiency and the prejudice prongs of the *Strickland* test.

Defendant first contends defense counsel failed to impeach Johnson and Peete with their complete criminal records and the specific details of their agreements with the State.

On the date of his trial testimony, Johnson had the following convictions, adjudications, and pending charges: (1) a juvenile adjudication for aggravated battery in 1989 (probation); (2) a juvenile adjudication for theft in 1993 (probation and detention); (3) an adult felony conviction for unlawful use of a weapon in 1997 (conditional discharge); (4) a pending felony residential burglary charge, for which he was arrested in July 1998, after he entered into the agreement with the State to testify in the present case; (5) an arrest for armed violence in conjunction with the 1998 residential burglary charge, but the State did not press charges; and (6) a *pending* petition to revoke probation for domestic battery, which was set for hearing after defendant's trial.

On direct, the State revealed the weapons conviction, the pending burglary charge and the fact that "back in high school," Johnson was "adjudicated as a delinquent because [h]e got into a fight." Defense counsel was ineffective because he did not attempt to inform the jury of the remainder of Johnson's criminal record or the fact the high school "fight" was actually a felony aggravated battery. Defense counsel also failed to point out Johnson's petition to revoke probation was pending at the time of his testimony and his sentence of conditional discharge was pending when he entered into the agreement with the State. Johnson had a strong interest in cooperating with the State because he could have faced up to three years in prison on the weapons conviction and he faced up to a year on the pending revocation-of-probation petition. Defense counsel should have elicited testimony regarding Johnson's theft adjudication because it was an offense directly involving dishonesty. See *Spates*, 77 Ill. 2d at 202-03, 395 N.E.2d at 568 (reasonable relation between theft and testimonial deceit).

In addition to the failure to inform the jury of the totality of Johnson's criminal background, defense counsel failed to elicit testimony concerning the details of Johnson's agreement with the State. I conclude Johnson's credibility would have been seriously undermined if the jury had been aware the State could reinstate

murder charges against Johnson if he failed to testify to the "truth," as spelled out in the agreement. As to Steven Peete, defense counsel failed to impeach him with a prior juvenile adjudication for felony mob action and failed to inform the jury of the details of Peete's agreement with the State.

To support his claim of ineffective assistance, defendant points to the trial of codefendant Douglas, who was acquitted of first degree murder in the death of Shepherd. In a recent case, the supreme court compared the results of the trials of codefendants when one defendant claimed ineffective assistance of counsel on appeal. *Edwards*, 195 Ill. 2d at 165, 745 N.E.2d at 1225. In *Edwards*, the court looked to the trial of the first co-defendant, where the claimed error did *not* occur, to conclude counsel's ineffectiveness in the trial of the other codefendant did not result in prejudice because the first codefendant was also convicted. *Edwards*, 195 Ill. 2d at 165, 745 N.E.2d at 1225. I conclude the converse can be argued, *i.e.*, a codefendant's acquittal can be used to argue defense counsel's strategy constituted ineffective assistance because the results would have been different had he used the same evidence that codefendant's counsel used.

At codefendant Douglas's trial, testimony regarding Johnson's prior convictions, pending charges, and vulnerability to additional prison time *was* admitted as impeachment evidence over the State's objection. In addition, in codefendant Douglas's trial, the court allowed defense counsel to tender a copy of Johnson's agreement with the State as an exhibit, elicit testimony that Johnson's trial testimony had to *match* the story his attorney originally told prosecutors in order for him to avoid his own murder prosecution, and tell the jury the "truth" in the case before it was specifically defined in the agreement and Johnson had to testify accordingly or the State could reinstate murder charges against him. Codefendant Douglas was found not guilty, *despite the existence of deoxyribonucleic acid (DNA) blood evidence found on his clothing that matched the DNA of Shepherd*, the victim. No physical evidence linked defendant to Shepherd's death.

The decision whether to impeach a witness is generally considered a matter of trial strategy. See *Ward*, 187 Ill. 2d at 261-62, 718 N.E.2d at 127 (decisions on what evidence to present are matters of trial strategy). Defense counsel in the present case may have been unaware of codefendant Douglas's successful impeachment of Johnson. However, defense counsel had the same impeachment evidence at his disposal as did codefendant Douglas's counsel, but he did not even attempt to impeach Johnson. Peete did not testify at codefendant Douglas's trial so we do not have a point of comparison, but defense counsel did not even attempt to impeach Peete with his prior criminal record or the totality of his agreement with the State.

There was no trial strategy in defense counsel's total failure even to *attempt* to impeach the State's two main witnesses, especially considering the lack of physical evidence against defendant. The credibility of the State's witnesses was the critical issue in the jury's determination of defendant's guilt or innocence. The successful introduction of compelling impeachment evidence at codefendant Douglas's trial leads me to conclude that, but for defense counsel's failure to impeach Johnson and Peete, there is a reasonable probability the outcome of defendant's trial would have been different.

Defense counsel's failure to call two disinterested eyewitnesses was even more egregious. Defense counsel's decision whether to call a witness is *generally* a matter of trial strategy and immune from claims of ineffective assistance. *Enis*, 194 Ill. 2d at 378, 743 N.E.2d at 12. However, the failure to subpoena witnesses known to defense counsel who could contradict the State's theory of the case or provide exonerating testimony constitutes ineffective assistance. *Butcher*, 240 Ill. App. 3d at 510, 608 N.E.2d at 498.

Defense counsel's failure to call Leroy Hunter and Toni Leonard amounted to ineffective assistance because neither of these witnesses could identify defendant as a participant in the beating while they could identify both Peete and Johnson as *participants*. Hunter originally contacted the police and identified Peete as a participant. Hunter also testified at codefendant Douglas's trial that he thought Peete was a participant but was not comfortable "swearing" to the identification. In codefendant Douglas's trial, Hunter's taped statement to police, in which he stated, "I do know Joe Posey and this Peete," was introduced as substantive evidence. Hunter's identification of Peete was bolstered because Hunter knew Peete as a neighbor, and Hunter, who was not saddled with prior criminal convictions, was a far more credible witness than the State's witnesses. Hunter's testimony would have virtually destroyed Peete's credibility *and* contradicted the State's version of the facts surrounding the beating.

Toni Leonard's testimony would have contradicted and weakened Rita Butler's testimony and Leonard would have identified Johnson as a participant in the beating. At codefendant Douglas's trial, Leonard testified she witnessed the altercation in its entirety as she walked home that evening. She saw Lynntez Holt and Jeff Dillon initiate the argument with Shepherd, which contradicts Butler's contention that defendant started the fight. Further, Leonard, who had been a neighbor of Johnson's, identified him as a *participant* in the beating. Leonard's testimony at codefendant Douglas's trial was consistent with statements she gave to police, and these statements were tendered to defense counsel during discovery in the present case.

Defense counsel may have chosen not to call these witnesses for various reasons, such as Leonard's admitted drug use or Hunter's possible reluctance to testify because he was Peete's neighbor. However, there was *no risk* and substantial advantage to calling these witnesses to testify. As to Hunter, if he did not cooperate, defense counsel could have presented his taped statement to police as substantive evidence under section 115—10.1(c)(2)(C) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10.1(c)(2)(C) (West 1998)). This would have eviscerated the credibility of as well as contradicted the State's theory. Toni Leonard was as credible a witness as the State's witness, Rita Butler, who also admitted a drug problem. Butler, who the police knew was involved in drugs and who had a criminal record, may have had incentive to cooperate and testify for the State. Leonard, who stood only a few feet from the beating, was in a far better position than Butler to view the beating and identify participants.

Defense counsel's failure to call Hunter and Leonard could hardly be called trial strategy. I can fathom no strategy in this case that could overcome the value of their potential testimony. At codefendant Douglas's trial, these witnesses were called to discredit the State's witnesses and to contradict the State's version of facts. I conclude that, but for defense counsel's failure to call these witnesses, there is a reasonable probability the outcome of defendant's trial may have been different.

Defense counsel's failure to impeach Peete and Johnson and his failure to call Hunter and Leonard as disinterested witnesses amount to ineffective assistance of counsel and deprived defendant of his sixth amendment right to counsel and a fair trial.

Defendant also contends the trial court erred when it permitted Heather Vinson's hearsay testimony regarding the conversation she overheard between her boyfriend, codefendant Douglas, and an *unidentified* third person. Vinson could not identify the person in the backseat of her vehicle, nor could she attribute any specific words to either man.

Defense counsel's objection to the introduction of Vinson's hearsay testimony was overruled by the trial court:

"I understand the State's theory to be and the evidence, at least for purposes of analyzing this objection, to circumstantially permit the possible conclusion that the [d]efendant was the person other than Bobby Joe Douglas in the vehicle with Ms. Vinson, and it is my view that the statements elicited by the State were admissible either as a statement by the [d]efendant or adopted by the [d]efendant's silence made by Bobby Joe Douglas."

Hearsay is defined as testimony regarding an out-of-court state-

ment offered for the truth of the matter asserted. *Cloutier*, 178 Ill. 2d at 154, 687 N.E.2d at 936. Hearsay is generally inadmissible unless it falls under an exception. *Cloutier*, 178 Ill. 2d at 154, 687 N.E.2d at 936. One exception to the hearsay rule permits the introduction of otherwise inadmissible hearsay if it constitutes an admission by the defendant, either express or tacit. *Goswami*, 237 Ill. App. 3d at 535-36, 604 N.E.2d at 1023.

For hearsay testimony to constitute an express admission, the witness must be able to attribute a particular statement to the defendant. If testimony "fail[s] to identify any statement to defendant," testimony regarding the witness's recollection of an overheard conversation does *not* constitute an express admission. *People v. Harbold*, 124 Ill. App. 3d 363, 374, 464 N.E.2d 734, 743 (1984). Vinson *failed* to identify defendant or attribute *any* statement to him. The trial court erred in admitting her testimony as an express admission.

A defendant's silence following an accusative statement may be considered a tacit admission and admissible as an exception to the hearsay rule. *Goswami*, 237 Ill. App. 3d at 535, 604 N.E.2d at 1023. Three elements satisfy this general rule: (1) the defendant must hear the accusative statement; (2) the defendant must have had an opportunity to reply and remained silent; and (3) the accusation was such that the natural reaction of an innocent person would be to deny it. *Goswami*, 237 Ill. App. 3d at 536, 604 N.E.2d at 1023, citing *People v. McCain*, 29 Ill. 2d 132, 135, 193 N.E.2d 784, 786 (1963). In criminal cases, application of the tacit-admission rule has been restricted and "such evidence should be received with caution and only when the conditions upon which it becomes admissible are clearly shown to exist." *Powell*, 301 Ill. App. 3d at 275, 703 N.E.2d at 936, quoting *People v. Aughinbaugh*, 36 Ill. 2d 320, 322-23, 223 N.E.2d 117, 119 (1967).

I have found no case in which the tacit-admission rule has been used against a defendant who was not even identified as a party to the conversation in which the alleged tacit admission occurred. Absent Vinson's positive identification of the third person in her car, the other evidence presented by the State does not sufficiently identify defendant as the third party.

Damion Johnson testified he saw defendant flee the scene of the attack in codefendant *Douglas's* car. Thus, defendant was present in a car with Douglas at some point that night. However, there is insufficient evidence to show defendant was the third person in *Vinson's* car that night. There is no evidence establishing a time line of events that night after the assailants fled the scene, other than the phone records presented by the State. Even the testimony of Cleo White regarding the time she received calls from Douglas contradicts the

times listed on the telephone records. There is no conclusive evidence as to defendant's whereabouts after he fled the scene in Douglas's car until Cleo White found him in her son's room. According to Cleo White, defendant told her *Douglas* dropped him off. Whether Douglas dropped defendant off after they fled the scene in Douglas's car or whether Vinson and Douglas dropped defendant off in Vinson's car remains unclear. With 12 other codefendants originally charged in this crime, there were 10 other men who could have been in Vinson's car and carried on a conversation with Douglas that "they beat some guy bloody."

The State failed to present sufficient evidence to show defendant was the unidentified man in Vinson's car. The trial court erred in admitting the hearsay evidence as either an express or tacit admission. The State argues that, even if the evidence was inadmissible, evidence of defendant's guilt was overwhelming and any error was harmless. In light of defense counsel's ineffective assistance and the lack of physical evidence against defendant, the evidence was not overwhelming and this error seriously affected defendant's right to a fair trial.

Defendant also alleges 12 instances of prosecutorial misconduct. Two of defendant's allegations are well-founded: the prosecutor's improper use of defendant's prearrest silence and improper comments concerning witness fear. These instances of prosecutorial misconduct alone would not likely result in a deprivation of defendant's right to a fair trial, so while I condemn them, they do not merit further discussion.

Defendant's conviction should be reversed and the case should be remanded for a new trial.