2024 IL App (2d) 230101-U
No. 2-23-0101
Order filed February 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-1176 |
| SANTOS H. LERMA, | ) ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  In defendant's prosecution for sex offenses against his granddaughter, the trial court properly admitted a video recording in which the victim accused defendant of sexually abusing her. The recording and defendant's reaction to it when his son (the victim's father) played it for him were relevant to impeach his denial that he committed the offenses.

¶ 2   Following a bench trial in the circuit court of Kane County, defendant, Santos H. Lerma, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and a single count of indecent solicitation of a child (*id.* § 11-6(a)). The victim was his granddaughter, R.L. Defendant argues on appeal that the trial court erred in

admitting into evidence a cell phone video of R.L. accusing defendant of sexually assaulting her. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Before trial, the State moved to introduce out-of-court statements by R.L. into evidence pursuant to section 115-10(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10(a) (West 2020)). That provision allows the admission of certain out-of-court statements by a victim of a sex offense who was under the age of 13 when the offense was committed. *Id.* One of the conditions for admission is that "[t]he court find[ ] in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability[.]" *Id.* § 115-10(b)(1).

¶ 5      Judge Donald M. Tegeler Jr. presided over the hearing on the State's motion. At the hearing, R.L.'s mother, C.W. (f/k/a C.L.), testified that R.L. was born on January 20, 2012. R.L.'s father was S.T.L. Jr., who was defendant's son. During November 2018, defendant babysat R.L. and her brother on several occasions. On one occasion, R.L. told C.W. that defendant had touched her while C.W. was gone. R.L. clarified that defendant touched her "parts," which was the term she used for her vagina. C.W. relayed R.L.'s account to S.T.L. Jr. Later, C.W. spoke with R.L. again about her allegations, and R.L. reiterated what defendant had done to her. Without R.L.'s knowledge, C.W. used her cell phone to video record the conversation. Judge Tegeler expressed concern that the recording might not have been complete and, therefore, concluded it was not sufficiently reliable for admission under section 115-10(a). Nevertheless, Judge Tegeler added, "Obviously, [if] the defense crosses on it, State, you can walk right through the door."

¶ 6      The matter proceeded to trial before Judge Elizabeth K. Flood. At trial, R.L. related an incident that occurred when the defendant was babysitting her while her parents had gone out for

dinner. R.L. was five or six years old at the time. R.L. testified that defendant touched her in her "private part." Either before or while touching her, defendant asked R.L. if she could "show him" and if he could "touch them." R.L. tried to tell him "no" and to stop. Defendant touched her multiple times, both over and under her clothes.

¶ 7    C.W. testified that, on November 3, 2018, defendant babysat R.L. while C.W. and S.T.L. Jr. went out for dinner. When they returned, defendant left. At that point, R.L. told C.W. that defendant had touched her "parts," meaning her vagina. Because R.L. refused to talk about the incident with S.T.L. Jr., C.W. video-recorded a conversation with R.L. on her cell phone so she could play the recording for S.T.L. Jr.

¶ 8    S.T.L. Jr. testified that, after watching the recording from C.W.'s cell phone, he visited defendant and played the recording for him. According to S.T.L. Jr., defendant's hands started shaking while he watched the recording. When the recording ended, defendant apologized to S.T.L. Jr.

¶ 9    Social worker Susan Salinas-Ramirez testified that, in June 2019, while employed by the Kane County Child Advocacy Center, she conducted an interview with R.L., in which R.L. stated that her grandfather had touched her vagina while babysitting her. A video recording of the interview was played during the trial.

¶ 10    Defendant testified that he was born in 1948. He admitted that he babysat R.L. and her brother sometime in November 2018. At some point, R.L. began climbing on defendant's back. She started to fall, but defendant caught her. Later, R.L. told defendant that he had touched her "down there." Defendant told R.L. he was sorry and asked if she would have preferred that he let her fall. Defendant denied that he ever intentionally touched R.L.'s private parts or touched her under her clothes. Defendant later spoke with S.T.L. Jr. at defendant's home. S.T.L. Jr. showed

defendant a video recording on his cell phone. When the recording ended, S.T.L. Jr. told defendant that he felt like "beating the crap" out of him. Defendant testified that he was afraid and did not say anything at that point. Defendant denied that he apologized to S.T.L. Jr.

¶ 11    On cross-examination, the prosecutor asked defendant what the recording on S.T.L. Jr.'s cell phone showed. Defense counsel objected, but Judge Flood overruled the objection, reasoning that "the defense has opened the door to [defendant's] reaction to whatever was said." Defendant indicated that the recording showed C.W. asking R.L. questions. R.L. told C.W. that defendant touched her "down there." Defendant reiterated that he said nothing in response to the recording because S.T.L. Jr. was "real angry" and defendant was afraid S.T.L. Jr. was "going to start punching." Asked if he had any feelings about being accused of touching R.L., defendant responded, "I did touch her but not the way [S.T.L. Jr.] was thinking I touched her."

¶ 12    After defendant completed his testimony, the defense rested. The prosecutor advised Judge Flood that he intended to admit the cell phone recording into evidence to impeach the defendant's testimony. Defense counsel objected based on Judge Tegeler's ruling that the recording was not sufficiently reliable to be admissible under section 115-10(a) of the Code. Judge Flood overruled the objection, noting Judge Tegeler's remark that "[if] the defense crosses on it, State, you can walk right through the door." Judge Flood added:

"I think that the reason that the State is asking to admit this and what makes this relevant at this time is the defendant has chosen to testify. In choosing to testify, he has put his own credibility at issue. *** The defendant's specific reaction and statements following watching the video are subject to arguments related to his credibility."

¶ 13    After defendant was found guilty and sentenced, he filed this timely appeal.

¶ 14                                   II. ANALYSIS

¶ 15    The sole issue raised on appeal is whether Judge Flood erred in admitting into evidence the cell phone recording of R.L.'s conversation with C.W. We do not disturb evidentiary rulings unless the trial court abused its discretion. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 108. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or if no reasonable person would agree with the position adopted by the trial court." *Id.*

¶ 16    As noted, Judge Flood admitted the recording because defendant's reaction after watching it was relevant to the credibility of his testimony. It is well-established that

"[u]nder the rule for impeachment by omission, it is permissible to use a witness's prior silence to discredit his or her testimony if: '(1) it is shown that the witness had an opportunity to make a statement, and (2) under the circumstances, a person normally would have made the statement.' " *People v. Clay*, 379 Ill. App. 3d 470, 481 (2008) (quoting *People v. Williams*, 329 Ill. App. 3d 846, 854 (2002)).

In essence, the omission is treated as a prior inconsistent statement because it is inconsistent with trial testimony denying guilt. See *People v. Miller*, 2017 IL App (1st) 143779, ¶ 43 (observing that the applicable jury instruction "informs the jury that the believability of a witness may be challenged by evidence of a prior inconsistent statement and, accordingly, covers inconsistencies caused by both omissions and affirmative statements"). The rule clearly applies here.

¶ 17    Defendant maintains that the principle of impeachment by omission was inapplicable because he himself had already testified that he remained silent after viewing the recording. Given that testimony, he argues, there was nothing for which to impeach him, and the recording "failed to contradict or impeach" his account of his reaction to the video. We disagree. First, it would be reasonable to conclude that defendant was simply not truthful when he testified that the recording evoked no reaction from him other than silence. In turn, it would be reasonable to credit the

testimony of S.T.L. Jr. that, contrary to defendant's testimony, defendant apologized after watching the recording. Second, defendant takes an unduly narrow view of what evidence was subject to impeachment. Defendant's reaction to the recording was admissible to impeach his trial testimony, denying the accusations against him. Defendant testified that he was silent after viewing the recording because he feared physical violence from S.T.L. Jr. The trial court, however, determined that the accusations were serious enough that an innocent person viewing the recording would naturally have denied the accusations rather than remained silent. Thus, in the court's view, defendant's silence was admissible to question the veracity of his testimony that he did not sexually assault R.L. As these were reasonable conclusions, there was no abuse of discretion.

¶ 18    Defendant also asserts that Judge Flood improperly relied on the content of the recording and treated it as substantive evidence. Defendant does not explain why he believes Judge Flood did so. On the contrary, Judge Flood clarified that she considered the recording only for impeachment purposes. In finding defendant guilty, she specifically stated:

> "*** I am not taking anything that was in the video as substantive evidence to be true. But if a grandfather who has a good relationship with his granddaughter hears her say that he touched her under his [*sic*] clothes, that she doesn't want him to babysit her anymore, that she told him to stop but he did not, that he made her feel sad, I don't understand and it is incredible to this Court that he would have simply remained silent without reacting at all."

¶ 19    Defendant also argues that, in admitting the recording, Judge Flood misapplied Judge Tegeler's earlier ruling. Defendant notes that Judge Tegeler indicated that, if the defense conducted cross-examination concerning the recording, this would open the door for admission of the recording into evidence. Defendant notes that, although he mentioned the recording in his direct

examination, the recording was not mentioned during cross-examination of the State's witnesses. However, Judge Tegeler's ruling was not binding on Judge Flood. Assuming, *arguendo*, that Judge Tegeler's ruling could be construed as barring the recording's use under the rule of impeachment by omission, Judge Flood was free to correct that ruling. See *People v. Jenkins*, 2023 IL App (5th) 210085, ¶ 22 ("[I]n a criminal case, the circuit court possesses the inherent power to reconsider and correct its own rulings, *** [Citation.] This is true even if the ruling under consideration was entered by a different judge of the circuit court."). Thus, the germane consideration here is not whether Judge Flood's ruling was consistent with Judge Tegeler's, but whether Judge Flood's ruling was correct. As explained, it was.

¶ 20    Defendant further argues that "[w]here the recording could not have been used to impeach [defendant's] trial testimony, the evidence essentially constituted inadmissible prior consistent statements of R.L." Having concluded that the recording was admissible for impeachment purposes, we necessarily reject this argument. In addition, defendant argues that the recording did not satisfy the criteria for admissibility as an admission by silence. Defendant contends that silence in the face of an accusation should not be considered an admission if the defendant reasonably believed it would be safer to remain silent than to respond to the accusation. Again, because the recording was properly admitted as impeachment evidence and the court considered it for no other purpose, it makes no difference whether it could have been admitted to establish a tacit admission of guilt by defendant. We note that there is a clear distinction between the "tacit admission" and "impeachment by omission" theories. See *People v. Powell*, 301 Ill. App. 3d 272, 278 (1998) (quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.7, at 679-80 (6th ed. 1994)) (" '[W]hile pre-arrest silence not induced by government action may be employed to *impeach* the criminal defendant, [citations], and even post-arrest silence occurring prior to the

giving of *Miranda* warnings, [citation], may be employed to *impeach* the criminal defendant, [citation], silence in the face of a pre-arrest statement should be received as an admission only with extreme caution.' " (Emphasis in original.)) The distinction is the improper use of a defendant's silence in the face of accusations by government actors or where the defendant does not take the stand. The concern is that an accused person may have reasons for their silence, "especially when an accusation is made under the auspices of law enforcement personnel." *Id.* (quoting Graham's Handbook § 802.7, at 679-80.) In this case, defendant took the stand and introduced the topic of his reaction to the video when confronted by his son, who was not a government actor. The trial court, using the "extreme caution" advocated by Professor Graham, allowed the use of the video only as impeachment of defendant's trial testimony that he was too afraid to deny the allegations. This was not an abuse of discretion.

¶ 21    We therefore conclude that Judge Flood's decision to admit the recording for purposes of impeachment was not error.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 24    Affirmed.